# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-40009

United States Court of Appeals
Fifth Circuit

**FILED**
July 9, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

WILLIE LAMPLEY,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:18-CR-20-1

Before KING, ELROD, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Willie Lampley appeals his convictions for receipt and possession of child pornography. He argues that the district court erred in allowing the Government to display several minutes of child-pornography videos located on his laptop to the jury at his trial and that, in any event, there was insufficient evidence to support the convictions. For reasons set forth below, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-40009

# I.

In fall 2017, Jeffrey Curl, a Beaumont Police Department detective and child-exploitation task-force officer for the U.S. Department of Homeland Security, located an internet protocol ("IP") address that was sharing child pornography. Curl successfully traced the IP address to a home in Beaumont, Texas, where defendant Willie Lampley resided with his sister and niece. Pursuant to a search warrant, Curl, together with federal agents and local police officers, searched Lampley's residence for electronic devices. Curl located and seized a laptop computer, a cellphone, and handwritten notes. Lampley told officers that the computer was his, that his sister purchased it for him at a pawn shop, and that no other males in the house had used it. Department of Homeland Security agent Jeff Fuselier testified that he asked Lampley, "if child pornography is found on your computer, whose child pornography is it?" According to Fuselier, Lampley replied, "I guess it's mine."[1]

Officers also questioned Lampley about his use of the laptop. Lampley explained to officers that he used the internet to "search[] for houses in videos" and denied that he had any adult pornography on his computer. He also stated that he had no peer-to-peer file-sharing software on his computer.[2]

A search of the computer revealed a large quantity of videos and images depicting young females—some under the age of ten—engaging in sexual acts. The video files were located in folders found under the "Owner" account, which was password protected. In all, there were 376 videos and 137 images identified by officers as child pornography.

---

[1] Fuselier acknowledged in his testimony that this was not an admission that Lampley knowingly possessed child pornography.

[2] File sharing is a means of sending and receiving digital files (containing, for example, images, videos, or documents) to and from different computers. The specific technology used in this case, BitTorrent, enables users to download pieces of files from multiple computers (known as "peers") at the same time.

2

No. 19-40009

Additionally, contrary to Lampley's remarks to officers, the Owner account also contained folders for Shareaza, a peer-to-peer file-sharing program used to download and share torrents. Lampley's internet search history also indicated that, on the day he received the laptop, he used it to search for peer-to-peer file-sharing software.

Officers also reviewed handwritten notes found in Lampley's bedroom, which Lampley admitted were in his handwriting. The notes contained references to several of Lampley's interests, including sports gambling and cryptocurrency. The notes also contained terms that are commonly associated with child pornography, many of which appeared in the file names for the videos and images of child pornography located on Lampley's computer. Similarly, the search history on Lampley's computer reflected queries for these terms.

Lampley's cellphone also contained relevant evidence. The cellphone's search browser history reflected searches for many of the child-pornography search terms found in Lampley's notes. Although the cellphone did not itself contain child pornography, it did contain "child erotica"—sexually suggestive images of partially clothed minors.

Sometime after searching Lampley's devices, Curl and Fuselier returned to Lampley's house. When they informed him that child pornography had been discovered on his computer, Lampley denied ever downloading child pornography or any torrent or file-sharing software. Lampley claimed that the content was downloaded by a hacker using a remote-access Trojan virus. He offered the same explanation for the child-erotica images and child-pornography search terms found on his cellphone. Officers scanned Lampley's devices for viruses. On Lampley's laptop, officers detected a "Bitcoin adder," a Trojan virus that uses the accessed computer to perform a discrete task related to the cryptocurrency Bitcoin. However, Curl explained at trial that such a

3

virus is not a "full control" virus, and therefore would not enable its user to remotely access a computer to perform a task like downloading child pornography. Curl also explained that he had never, in the 250 child-pornography cases he had worked on, encountered a situation in which a computer had been hacked via a Trojan virus in order to install child pornography on a computer. Officers did not locate any viruses on Lampley's cellphone.

A grand jury charged Lampley with one count of knowingly receiving child pornography and one count of knowingly possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and § 2252A(a)(5)(B), respectively. The indictment specifically names four files located on Lampley's computer, with descriptions of each video. Each file name clearly denotes sex acts involving children, uses graphic language, and contains several of the child-pornography terms found in Lampley's notes. Similarly, the descriptions explain that the videos depict minors engaging in sexual acts.

At trial, the Government sought to introduce into evidence compact discs of the videos described in the indictment. In lieu of showing these videos to the jury, Lampley offered to stipulate that each exhibit contained child pornography as defined under federal law. The Government declined this offer. Analyzing Lampley's offer under Federal Rule of Evidence 403, the court denied Lampley's motion to stipulate. Ultimately, the Government showed jurors around 8 minutes of the video described in count one of the indictment, fast-forwarding through portions of the (roughly) 22 total minutes of video. At the close of evidence, Lampley filed a motion for judgment of acquittal, which the court denied. The jury thereafter convicted Lampley on both counts. The court sentenced Lampley to 210 months in prison as to count one and 120 months as to count two, with the terms to run concurrently. Lampley appeals.

No. 19-40009

## II.

## A.

Lampley argues that the district court abused its discretion in refusing his offer to stipulate that the videos introduced contained child pornography. "This court reviews a district court's evidentiary rulings for an abuse of discretion." *United States v. Caldwell*, 586 F.3d 338, 341 (5th Cir. 2009). A district court "abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* This court's review of evidentiary determinations is subject to the rule of harmless error, whereby reversal is only warranted if there is a "reasonable possibility that the improperly admitted evidence contributed to the conviction." *United States v. Yanez Sosa*, 513 F.3d 194, 201 (5th Cir. 2008) (quoting *United States v. Mendoza-Medina*, 346 F.3d 121, 127 (5th Cir. 2003)).

Under Federal Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." The admissibility of evidence under Rule 403 when the defendant has offered a stipulation is governed by the Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172 (1997). In that case, the Supreme Court determined that Rule 403 barred the admission of the full record of a prior judgment of conviction in a felon-in-possession-of-a-firearm prosecution because the defendant had already offered to stipulate to that prior conviction. *Id.* at 190-92. In reaching its conclusion, the Court weighed the prejudicial effect of introducing evidence of the prior conviction against the prosecution's interest in "prov[ing] its case by evidence of its own choice." *Id.* at 186. Allowing a defendant to stipulate to any fact that the Government sought to prove by conventional evidence would "rob the [prosecution's] evidence of much of its fair and legitimate weight." *Id.* at 187 (quoting *Parr v. United States*, 255 F.2d 86, 88 (5th Cir. 1958)). Moreover, the introduction of a stipulation in lieu of

No. 19-40009

hard evidence may upset jurors' expectations, thereby leading them to "wonder what they are being kept from knowing." *Id.* at 189. Nonetheless, the Court found that these interests had "virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." *Id.* at 190. Therefore, given the potential prejudice associated with the defendant's record, and given the defendant's offer to stipulate, the Court concluded that Rule 403 barred admission of the record. *Id.* at 190-92.

This court has already addressed the application of *Old Chief* to child-pornography cases. In *Caldwell*, the prosecution sought to show the jury three short clips of child pornography found on the defendant's computer. 586 F.3d at 342. The defendant stipulated that these videos contained visual depictions of minors engaging in sexually explicit conduct, and this stipulation was read to the jury. *Id.* Despite the defendant's stipulation, the trial court allowed the Government to publish the three clips. *Id.* This court affirmed. Looking to the principle espoused in *Old Chief* that the prosecution is entitled to try a case by evidence of its own choice, the panel held that the substitution of a stipulation would detract from the evidentiary force of the prosecution's case and diverge from jurors' expectations. *Id.* at 343. Moreover, the videos' publication helped establish the likelihood that the defendant "knew that the video depicted child pornography (which knowledge the stipulation did not mention)." *Id.*

*Caldwell* controls here. Lampley seeks to distinguish *Caldwell*, noting that *Caldwell* involved only the publication of "two 20 second clips from a total of five videos in question," while in this case the jury viewed around eight minutes of video. But nothing in *Caldwell* suggests that the duration of the clips informed the court's holding. Instead, *Caldwell* proceeds from the premise that, unlike the record of prior conviction at issue in *Old Chief*, "child pornography is graphic evidence that has force beyond simple linear schemes

6

of reasoning," which "comes together with the remaining evidence to form a narrative to gain momentum to support jurors' inferences regarding the defendant's guilt [and] provides the flesh and blood for the jury to see the exploitation of children." *Id.* at 343.

Whatever the length of the videos at issue, failing to introduce them will detract from the narrative strength of the prosecution's case and potentially upset jurors' expectations. Put another way, such videos are of significant probative value regardless of their duration. To be sure, the length of a video will increase the risk of *prejudice*, but the appropriate remedy to such prejudice is to shorten the clips, not to substitute a stipulation. Lampley never requested such paring down before the district court, nor does he do so before this court. Accordingly, when it comes to the evidentiary alternatives as they were presented below and on appeal—hard evidence of illicit material or a stipulation—*Caldwell* makes clear that a district court does not abuse its discretion in denying a defendant's offer to stipulate. *Id.* at 343; *see also United States v. Blank*, 701 F.3d 1084, 1092 (5th Cir. 2012) ("Blank's final contention is that the district court abused its discretion by admitting two exhibits of child pornography after Blank offered to stipulate that the material was child pornography. That claim is foreclosed by this court's decision in [*Caldwell*]." (footnote omitted)). Thus, the district court did not abuse its discretion in allowing the Government to display clips from the videos located on Lampley's computer to the jury.

**B.**

Lampley next argues that there was insufficient evidence to support his conviction. Because Lampley raised his sufficiency-of-the-evidence challenge below, this court reviews the issue de novo. *United States v. Moreland*, 665 F.3d 137, 148 (5th Cir. 2011). In conducting this review, we view the evidence in the light most favorable to the jury verdict. *United States v. Winkler*, 639

F.3d 692, 696 (5th Cir. 2011). This court "must affirm if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *Id.* (quoting *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996)).

Lampley was convicted under 18 U.S.C. § 2252A(a)(2)(A) and (a)(5)(B). The former provision prohibits the knowing receipt or distribution of "any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." § 2252A(a)(2)(A). The latter provision punishes anyone who

> knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

§ 2252A(a)(5)(B). Lampley does not dispute that the images and videos located on his computer contained child pornography. Nor does he dispute the connection between the materials and interstate commerce. The only issue in dispute on appeal is whether Lampley knowingly received or possessed the materials.

In knowing-possession prosecutions, the Government may make its case for the possession element by proving direct possession (i.e., physical control over the contraband) or by proving constructive possession, defined as "the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found." *Moreland*, 665 F.3d at 150. "The government may prove constructive possession by circumstantial evidence." *Id.*

No. 19-40009

In most cases, constructive possession may be inferred "if a defendant had exclusive possession of the place in which the contraband is found." *Id.* Where there is no exclusive possession—i.e., when child pornography is found on a shared computer—"the government must introduce some evidence, in addition to the evidence of shared use, to support a reasonable jury inference that the defendant knew that the images existed and had the knowledge and ability to access and exercise dominion and control over them." *United States v. Woerner*, 709 F.3d 527, 536 (5th Cir. 2013).

Applying this framework, we conclude that Lampley's conviction was supported by sufficient evidence. Even assuming arguendo that Lampley did not have exclusive possession of the computer (in which case constructive possession may not be automatically inferred), the Government still met its burden under the standard for cases of joint occupancy. First, the Government established that Lampley had the knowledge and ability to access the images and videos: Lampley knew the password for the account on which the videos were stored, and Lampley makes no argument that he lacked the knowhow to locate and open the folders where the images and videos were stored. Second, there is ample circumstantial evidence to suggest that Lampley knew the images and videos existed. As discussed, his handwritten notes match many of the terms located in the videos. Lampley protests that he merely wrote the terms down because he noticed them in his search browser, but some of the entries in Lampley's notebook are wholly inconsistent with this (already questionable) account. For example, in one page of his notes where illicit terms appear, Lampley lists certain products and websites that do not relate to child pornography with an accompanying checkmark followed by "out," suggesting an interest in "checking out" such items (e.g., "[checkmark] out 4G mobile broadband cheap"). Right alongside these benign items is an entry that reads "[checkmark] out Ms. Teen Delaware porn scene." In light of this entry, it is

9

difficult to credit Lampley's claim that he merely saw the search terms and wrote them down out of concern that he had been hacked. In any event, the inference that the notes reflect Lampley's intent to download child pornography was sufficiently plausible that the jury was not required to draw the contrary inference that Lampley merely wrote down the terms after seeing them in his browser.

The evidence located on Lampley's cellphone further supports the Government's account. The search terms on Lampley's mobile browser closely match the terms in Lampley's notes as well as the file names for the videos. Additionally, Lampley's cellphone contained child erotica, which Curl testified is a common companion to child pornography. There is no evidence (other than Lampley's testimony) that Lampley's cellphone had a virus or was otherwise hacked, nor is there evidence that Lampley allowed anyone else to browse the web on his cellphone. The confluence of Lampley's handwritten notes, together with the search terms and child erotica on his cellphone, make it highly likely that Lampley downloaded and was aware of the child pornography found on his computer.

In light of this evidence, the jury was not required to accept Lampley's contrary testimony that a hacker had downloaded the files to his computer. Moreover, there is hardly any evidence in support of that theory. Although a virus was located on Lampley's computer, Curl testified that the specific type of virus he discovered would not allow a hacker to remotely access a computer in order to download child pornography. Curl also testified that he had never, in the 250 child-pornography cases he had worked on, come across a case where a hacker had remotely downloaded child pornography to someone's computer via a Trojan virus. The jury was therefore free to reject Lampley's account that the child pornography had been downloaded by a hacker.

10

No. 19-40009

This conclusion is unaltered by the two cases Lampley cites in which this and another court reversed child-pornography convictions due to insufficient evidence. In both cases, the defense put forward affirmative evidence tying the child pornography to another user of the computer. In *Moreland*, for example, the defendant shared his computer with his terminally ill father, and the defense had presented evidence suggesting that the material belonged to the father. 665 F.3d at 146-47 (alluding to evidence that father frequently viewed adult pornography and had requested defendant's brother destroy his computers after learning of child-pornography investigation into defendant). In addition, the Government in *Moreland* failed to put forward any evidence suggesting it was the defendant, rather than the father or some other user, who viewed the child pornography. *Id.* at 151-52. For that reason, this court reversed, finding insufficient evidence of knowing possession. *Id.* at 152; *see also State v. Myrland*, 681 N.W.2d 415, 420 (Minn. Ct. App. 2004) (finding evidence insufficient to show defendant used computer to view child pornography when "uncontroverted evidence" showed that "potentially hundreds of people" could have accessed same computer). Here, by contrast, Lampley's notes and cellphone searches tie the videos to him, and Lampley does not argue that any person with whom he shared his laptop accessed the pornography or even had the password to the user account on which the pornography was stored. Rather, he pins it all on an unknown hacker, a theory that, for reasons stated above, lacks significant evidentiary support. Thus, the Government put forward sufficient evidence of knowing possession to support a guilty verdict in this case.

Lampley's attack on his knowing-receipt conviction fails for similar reasons. As discussed above, jurors were permitted to discount Lampley's theory that his computer had been hacked. It follows, then, that they were similarly justified in concluding that it was Lampley—the only other person

11

alleged to have had access to the specific user account on which the files were found—who had downloaded the files. Given the highly graphic file names attached to the illicit images and videos, Lampley cannot plausibly argue that he downloaded the files but somehow did not know what they were. Nor does Lampley argue or put forward any evidence to support a claim that he somehow received the files by accident, save for his naked assertion that the files were downloaded by a hacker. Finally, Lampley does not argue that some other party, such as someone with whom he shared the computer, downloaded the material. Accordingly, the Government presented sufficient evidence to establish that Lampley knowingly received child pornography.

## III.

For the reasons set forth above, the judgment of the district court is AFFIRMED.