*United States v. Zhukov*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of April, two thousand twenty-three.

PRESENT:

> PIERRE N. LEVAL,
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

––––––––––––––––––––––––––––––––––––––

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                            No. 21-2981

ALEKSANDR ZHUKOV, AKA ALEXANDER ZHUKOV, AKA IBETTERS,

> *Defendant-Appellant.*\*

––––––––––––––––––––––––––––––––––––––

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

**For Defendant-Appellant:** ZACHARY A. MARGULIS-OHNUMA (Tess M. Cohen, *on the brief*), ZMO Law PLLC, New York, NY.

**For Appellee** SARITHA KOMATIREDDY (Artie McConnell, Alexander F. Mindlin, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Eric R. Komitee, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Aleksandr Zhukov appeals from a judgment of the district court following a jury trial in which he was convicted of wire-fraud conspiracy, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. § 1343; money-laundering conspiracy, in violation of 18 U.S.C. § 1956; and money laundering, in violation of 18 U.S.C. § 1957. In a nutshell, the government charged Zhukov with operating a scheme – dubbed the "Methbot" scheme – to defraud others in the digital-advertising industry. As part of the scheme, Zhukov artificially inflated the revenues of his purported ad network by programming computer servers (or

2

"bots") to automatically upload advertisements to blank websites even though customers paid him commissions to deliver advertisements to human internet users through real webpages. The district court ultimately sentenced Zhukov to ten years' imprisonment and ordered him to forfeit $3,827,493 as the proceeds of his unlawful scheme. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Zhukov contends on appeal that the district court erred by (1) allowing lay witnesses to give expert opinion testimony in violation of Rule 701 of the Federal Rules of Evidence and the Confrontation Clause; (2) rejecting his motion to dismiss the indictment based on violations of his Sixth Amendment right to a speedy trial; (3) miscalculating the loss amount under the United States Sentencing Guidelines (the "Guidelines"); and (4) inflating the forfeiture award by including legitimate business earnings. We find no reversible error stemming from the district court's rulings on these points.

To begin, Zhukov claims that the testimony of the government's cybersecurity-company witnesses "was not based on personal perceptions and thus was improper lay[-]opinion testimony." Zhukov Br. at 36–38. Lay-witness testimony is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the

3

witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [of the Federal Rules of Evidence]." *See United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005) (quoting Fed. R. Evid. 701). Where, as here, a party "concedes that he did not make an argument . . . below, we exercise our discretion to review the district court's [decision] in this respect for plain error." *United States v. Weingarten*, 713 F.3d 704, 711 n.6 (2d Cir. 2013). Under this standard, "an appellate court may . . . exercise its discretion" to "correct an error not raised at trial" if there is "(1) error, (2) that is plain, . . . (3) that affects substantial rights . . . [and] (4) th[at] seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (alterations and internal quotation marks omitted).

The district court did not err – much less plainly err – in allowing Dimitris Theodorakis, a representative from cybersecurity firm White Ops, and representatives from other companies to testify as lay witnesses under Rule 701. For starters, Theodorakis's testimony was "rationally based on the perception of the witness." *Garcia*, 413 F.3d at 211 (quoting Fed. R. Evid. 701). Theodorakis limited his testimony to his observations as Senior Director of Detection at White

4

Ops when describing the company's data logs, its detection processes, and the differences between digital "signals" generated by human internet users versus those triggered by Zhukov's bots. Next, Theodorakis's explanations – regarding internet service providers, location of computers, time-of-day patterns, operating systems, mouse movements, browser information, and plug-ins – were helpful because Theodorakis "provide[d] insight into coded language," both figuratively and literally, "through [his] testimony." *United States v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008). And finally, while a closer call, Theodorakis did not testify based on specialized training. To be sure, Theodorakis addressed technical topics. Nonetheless, the government took great care to ensure that Theodorakis's testimony was based on "reasoning processes familiar to the average person in everyday life." *Garcia*, 413 F.3d at 215; *see also United States v. Natal*, 849 F.3d 530, 536 (2d Cir. 2017). There was nothing particularly specialized about Theodorakis's testimony concerning the similarities and dissimilarities of data left behind by human and bot-driven internet users. We therefore find that the district court did not plainly err in permitting the testimony of Theodorakis. *See Johnson*, 520 U.S. at 467 (explaining that "the word 'plain' is synonymous with 'clear' or, equivalently,

5

'obvious'" (other internal quotation marks omitted)).[1]

We reach the same conclusion with regard to the admitted lay testimony of the other company representatives. For example, Per Bjorke's testimony – about Google's calculations of payments for ads to computers at the Methbot IP addresses, its monitoring of human versus nonhuman traffic, and its data regarding signals generated by nonhuman users – was based on his experiences as the product manager of the ad traffic quality team, was helpful for the jurors' understandings of the facts at issue, and did not involve specialized reasoning. The same is true of the representatives from Moat, DoubleVerify, and Forensiq.

As for Zhukov's contention that "Theodorakis's testimony and [Government Exhibit 1] violated the Hearsay Exclusionary Rule and the Confrontation Clause," Zhukov Br. at 38, Zhukov made no such challenges during Theodorakis's testimony, *see* Zhukov App'x at 795–869, and when the exhibit was admitted into evidence, Zhukov objected only to language at the top of the

---

[1] Nor can we say that Theodorakis's testimony "affected substantial rights . . . [or] seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 469–70 (alteration and internal quotation marks omitted); *see also United States v. Caldwell*, 586 F.3d 338, 347 (5th Cir. 2009) (reaching same conclusion where testimony explained how LimeWire software platform was used, government disclosed subjects lay witness would testify about, "defense decided not to timely object," and "defense delved into similar, but defense[-]favorable testimony, on cross examination").

document that described Methbot as an "ad[-]fraud operation," *id.* at 2007, but otherwise agreed that "subject to [a] limiting instruction," which was provided by the district court, "there would be no objection," *id.* at 786–88. Accordingly, we review for plain error, and find no such error in the district court's findings on these forfeited issues. *See United States v. Gore*, 154 F.3d 34, 41 (2d Cir. 1998). Contrary to Zhukov's contentions, the White Ops *report* was never admitted into evidence. Although Government Exhibit 1 consisted of the IP addresses that were appended to the White Ops report as associated with the Methbot operation, the listed IP addresses were independently identified by FBI computer scientist Lena Loewenstine as ones that were found in Zhukov's servers. Thereafter, Theodorakis testified that he examined the listed IP addresses and that each generated bot-like signals. The *list* of IP addresses itself poses no Confrontation Clause or hearsay issues because it merely was used to cross-reference the IP addresses that Loewenstine identified as coming from Zhukov's servers with the IP addresses that Theodorakis described as generating bot-like signals.

Turning to Zhukov's Sixth Amendment arguments, we review a district court's denial of a Speedy Trial Clause claim for abuse of discretion. *United States v. Williams*, 372 F.3d 96, 112–13 (2d Cir. 2004). To determine whether pretrial delay

7

constitutes a constitutional violation, we weigh four factors: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

In denying Zhukov's "motion[s] to dismiss the indictment on Sixth Amendment speedy-trial grounds," Zhukov App'x at 559, the district court found that the *Barker* factors weighed against a finding of unconstitutional delay. As to the length of delay, we of course agree with Zhukov and the district court that a twenty-seven-month delay is "unquestionably a long period of incarceration." *See id.* at 562. While a long delay cuts against the government, this factor must be weighed against the other *Barker* factors. As the district court correctly noted, we have repeatedly "found no constitutional violation in cases involving substantially longer delays." *Id.* at 562–63; *see, e.g., United States v. Swinton*, 797 Fed. Appx. 589, 594–96 (2d Cir. 2019) (summary order) (finding delay constitutional even though the defendant had 57 months of pretrial incarceration); *United States v. Howard*, 443 Fed. Appx. 596, 599 (2d Cir. 2011) (summary order) (finding delay constitutional even though the defendant had 43 months of incarceration between arrest and guilty plea); *United States v. Reyes-Batista*, 844 Fed. Appx. 404, 407–08 (2d Cir. 2021) (summary order) (finding delay constitutional even though the defendant had 37

8

months of pretrial incarceration).  Next, given the complexity of the case, the

volume of discovery involved, the impact of the global pandemic, and the fact that

the delay was "beyond the prosecution's control," *id.* at 205–09,  and "occasioned

in part by the defense," *id.* at 565–66, the district court did not err by finding that

there was a neutral or "valid reason" that "justif[ied] appropriate delay," and that

the delay was not a "deliberate attempt . . . to hamper the defense," *Barker*, 407

U.S. at 531; *see also United States v. Akhavan*, 523 F. Supp. 3d 443, 451 (S.D.N.Y. 2021)

(finding that delay was attributable to the government, the defendants, and the

pandemic, which was "a neutral reason outside of the [g]overnment's control"),

*aff'd sub nom. United States v. Patterson*, No. 21-1678, 2022 WL 17825627 (2d Cir. Dec.

21, 2022) (defendant's speedy-trial argument was not raised on appeal).[2]   In

addition, even though Zhukov asserted his right to a speedy trial on several

occasions, the district court was justified in taking into consideration the fact that

---

[2] The trial was originally scheduled for March 16, 2020 and was, with Zhukov's consent, delayed until April 27, 2020. Zhukov App'x at 560.  At that point, the pandemic necessitated a further delay.  *Id.*  The government and court were prepared to begin trial on November 23, 2020.  *Id.*  On October 30, however, defense counsel – after "consistently demand[ing] the speediest trial available" – withdrew from the representation due to health concerns related to the pandemic. *Id.* at 560–61.  This resulted in a five-month delay while the new defense counsel prepared for trial. *Id.* at 561.  Trial was rescheduled for March 1, 2021, but increased sickness and deaths related to the pandemic resulted in a further delay to April 12, 2021.  *Id.*  The court delayed the trial one final time to May 5, 2021.  *Id.*  On these facts, the district court did not abuse its discretion in finding that the delay was largely attributable to the pandemic and actions of the defendant, rather than actions by the government.

"Zhukov's . . . counsel repeatedly expressed doubt that [Zhukov] could [have] be[en] prepared for . . . trial" had his request for an earlier trial been granted. Zhukov App'x at 566. Finally, while Zhukov's continued incarceration during the pandemic undoubtedly "engender[ed] anxiety and concern" – for Zhukov and all incarcerated defendants – we agree with the district court that there is no "basis to conclude that the defense *case* ha[d] been impaired by the delay." *Id.* at 568. For these reasons, the district court did not abuse its discretion in concluding that the Defendant's speedy-trial rights have not been infringed. *Id.* at 570.

Next, Zhukov challenges the district court's calculation of the loss amount under the Guidelines, which the court found to be $7.6 million based on the advertising traffic associated with the Methbot IP addresses. "We review [a] district court's factual findings on loss for clear error and its conclusions of law de novo." *United States v. Carboni*, 204 F.3d 39, 46 (2d Cir. 2000). And while "factual findings relating to loss must be established by a preponderance of evidence," *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009), district courts "need not establish the loss with precision but rather need only make a reasonable estimate

10

of the loss, given the available information," *Carboni*, 204 F.3d at 46 (internal quotation marks omitted).

Zhukov first argues that the loss amount was inflated because "not all the IP addresses in [Government Exhibit 1]," which Google used to calculate what advertisers purchased because of the Methbot scheme, "have been linked to Mr. Zhukov." Zhukov Br. at 51. But Loewenstine testified that the IP addresses from the White Ops list "matched" the ones "found . . . in several different places on [Zhukov's] drive," and concluded that "almost all of the IPs [she] found on the drive matched th[e] list of IPs from White Ops." Zhukov App'x at 785–76. Similarly, Theodorakis testified that the information from the White Ops logs was "associated with the IP addresses in Government Exhibit 1," *id.* at 802, and Bjorke explained that "traffic from all the[] [Methbot] IP addresses w[as] very consistent" and looked to be "from the same source," *id.* at 1561. This testimony was also corroborated by a host of business records and other evidentiary sources tying the White Ops list of Methbot IP addresses to Zhukov.

Second, Zhukov contends that "[s]ince IP addresses can be spoofed, there is no way to know conclusively whether or not the loss[-]amount totals in [Google's calculations] came from the IP addresses" found on Zhukov's drive. Zhukov Br.

11

at 51. While it is possible that IP addresses on White Ops's list could have been spoofed, the assertion "that IP addresses not connected to Mr. Zhukov are accountable for a *large portion* of the traffic summarized in [Google's calculations]," *id.* (emphasis added), runs counter to the evidence provided at trial. Furthermore, as the district court aptly noted, even if we were to assume that "two-thirds" of the IP addresses relied upon by Google did not actually belong to Zhukov's operations – which would be "an extremely defense[-]friendly [assumption]" – the loss would still "easily exceed the $3.5 million threshold" needed to support the eighteen-level enhancement for loss under the Guidelines. Zhukov App'x at 2421–22. For these reasons, we find that the loss amount was a "reasonable estimate of the loss" supported by a preponderance of evidence. *Uddin*, 551 F.3d at 180.

Lastly, Zhukov argues that the district court erred by ordering Zhukov to forfeit all of the funds that coconspirator Verta Media paid him because, according to Zhukov, "some of th[at] income . . . was in furtherance of legitimate business ventures." Zhukov Br. at 53–56. When an order of forfeiture is challenged on appeal, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Treacy*, 639 F.3d 32, 47–48 (2d Cir. 2011). On appeal, Zhukov proffers no convincing evidence supporting his argument that

at least some of Verta Media's customers intended to purchase nonhuman traffic for reasons of their own, for example to increase their website ratings. Zhukov cites only to his own self-serving testimony and certain chat discussions with some of Zhukov's other customers – not Verta Media – that could be construed as expressing interest in bot traffic. Indeed, as Zhukov concedes, *see id.* at 2486–87, each of the payments from Verta Media to Zhukov that the district court included in its forfeiture calculations was traceable to the Methbot operation through communications, invoices, contracts, and wire details, *see id.* at 2376–79. Accordingly, we cannot say that the district court committed clear error in calculating the forfeiture amount for the Verta Media payments after concluding that "apart from Zhukov's own testimony," which the court did not "find . . . believable," there was "zero or close to zero evidence to support Mr. Zhukov's theory" that the Methbot scheme had legitimate purposes apart from the fraud. Zhukov App'x at 2410–11.

We have considered Zhukov's remaining arguments and found them to be without merit. For these reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13