REVISED NOVEMBER 13, 2009

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2009

Charles R. Fulbruge III
Clerk

No. 08-50804

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ARKON CHRISTOPHER CALDWELL

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before GARWOOD, OWEN, and SOUTHWICK, Circuit Judges.
GARWOOD, Circuit Judge:

Defendant-appellant, Arkon Christopher Caldwell, appeals his convictions of one count of knowing possession, on or about November 7, 2005, of material transported in interstate commerce involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2), and of one count of the knowing receipt, from on or about February 4, 2005, to on or about November 7, 2005, of materials transported in interstate commerce involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(2), (b)(1). He raises three issues before this court. First, Caldwell argues that the trial court abused its discretion when it allowed the

prosecution to display to the jury brief excerpts of two videos depicting child pornography, already admitted into evidence, over the defendant's Rule 403 objection. Second, he complains that the trial court allowed the prosecution to display to the jury brief excerpts of two videos depicting adult bestiality, already admitted into evidence, also over the defendant's Rule 403 objection. Third, Caldwell complains the trial court committed plain error in allowing certain unobjected to testimony of a witness for the United States. He urges this court to hold this testimony resulted from prosecutorial misconduct. For the reasons stated below, we affirm Caldwell's conviction.

## STANDARD OF REVIEW

This court reviews a district court's evidentiary rulings for an abuse of discretion. United States v. Yanez Sosa, 513 F.3d 194, 199 (5th Cir. 2008). A trial court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence. Id. at 200. We review unobjected to opinion testimony and prosecutorial misconduct for plain error that affects substantial rights. United States v. Hitt, 473 F.3d 146, 161 (5th Cir. 2006). The error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id.

## FACTS AND PROCEEDINGS BELOW

Appellant Caldwell was an Army specialist who served seven months in Iraq, where he was a military police gunner. After returning from Iraq in about March or April 2004, he was stationed at Fort Bliss Army Base in El Paso, Texas. In the period beginning about nine or ten months after his return from Iraq, the computer in his Fort Bliss home accumulated seventeen videos depicting child pornography and many more adult pornographic videos. In July of 2005, federal agents discovered that this computer shared child pornography using a peer-to-peer file sharing program known as

2

LimeWire. Peer-to-peer programs like LimeWire allow users to share, search, and copy certain files over the Internet. An investigation of the internet protocol address revealed that the computer belonged to the defendant. By using one of these peer-to-peer programs, agents connected to Caldwell's computer and searched the files his computer shared on the network. They discovered over fifty files with titles indicative of child pornography. Agents downloaded and confirmed that these files depicted child pornography. Based on this information, the Government executed a search warrant of the defendant's home. When agents arrived at the defendant's home on November 7, 2005, and provided him with a copy of the search warrant, the defendant spontaneously stated that he knew he had pornography on his computer. The agents found no one other than the defendant at home at the time of the search.

When they entered the defendant's living room, the Government agents found the defendant's computer turned on with the LimeWire program downloading a file called, "animal sex Brazilian girl fucking dog." The Government found seventeen pornographic videos depicting minors engaging in sexually explicit conduct. Forensic analysis of the hard drive revealed that these files were created between September 20, 2005 and November 5, 2005. Along with child pornography, the agents found multiple videos depicting adult bestiality on the defendant's computer. When the defendant testified, he denied ever looking at child pornography or bestiality videos. He denied using his computer to download any pornography on the morning of the search. The jury returned a guilty verdict on both counts.

DISCUSSION

I.    Displaying Child Pornography to the Jury

During the Government's case-in-chief, it offered and published to the jury three short clips taken from over an hour's worth of child pornography. It introduced one video of child pornography, which lasted three minutes and thirty-two seconds. That video was not itself published to the jury. However, the court allowed the Government to publish to the jury a short excerpt of that video over the defendant's objection. Then, the Government introduced and published to the jury excerpts from two more child pornography videos found on the defendant's computer. These excerpts lasted thirty-four (or twenty-three) seconds and thirty-one seconds, respectively. The Government's evidence showed that one of these videos had been opened and previewed approximately half an hour before the agents arrived on November 7, 2005. All three of these brief video excerpts were entered into evidence and published to the jury over the defendant's Rule 403 objection.

The defense argued that because it had stipulated that the videos contained child pornography, under Old Chief v. United States, the Government did not need to publish the videos to the jury. 117 S.Ct. 644 (1997). The stipulation (which was read to the jury) states:

> "The government and the defense have stipulated that the 17 videos listed in Government's Exhibit 37 were found in the shared or incomplete LimeWire folders on the hard drive of the computer belonging to Arkon Caldwell and seized by George O'Campo on November 7, 2005 from 1910-B Humphrey [Caldwell's residence], which is located on Fort Bliss, Texas, and is also located within the Western District of Texas. That these videos were transported to that computer in interstate or foreign commerce, that is, through the internet via LimeWire.
>
> It is further stipulated that these 17 videos contain visual

4

depictions of minors under the age of 18, engaging in sexually explicit conduct, and that the parties have no evidence to suggest that actual minors were not used in the creation of those videos, and that the videos do show the minors engaged in sexually explicit conduct."

Caldwell contends that the trial court committed reversible error because it did not conduct a 403 weighing test.

While all relevant evidence tends to prejudice the party against whom it is offered, Rule 403 excludes relevant evidence when the probative value of that evidence substantially outweighs the unfairly prejudicial nature of the evidence. FED. R. EVID. 403; United States v. Rocha, 916 F.2d 219, 239 (5th Cir. 1990). When one party stipulates to a disputed fact, the stipulation conclusively proves that fact. Old Chief, 117 S.Ct at 653. Any additional evidence offered to prove that fact, while still relevant, could potentially violate Rule 403. Id.

Old Chief addresses the admissibility under Rule 403 of additional relevant evidence in light of a stipulation. In Old Chief, the prosecution charged Old Chief with violating a law that prohibited possession of a firearm by anyone who has been convicted of a felony. Id. at 647. Old Chief had previously been convicted of the felony offense of assault causing serious bodily injury. Id. Before trial, Old Chief moved in limine to prevent the prosecution from discussing the underlying felony and offered a stipulation of Old Chief's convicted felon status at the time in question. Id. at 648. The Government refused the stipulation. Id. On appeal, the Court begins its analysis with the general rule: the criminal defendant cannot stipulate his way out of the full evidentiary force of the Government's case. Id. at 653. The Court concludes by reversing the conviction as an exception to the general rule because the defendant's legal status (felon) is not part of the

Government's narrative or story.  Id. at 655.  A foundation of the Old Chief decision seems to turn on the contribution of the challenged evidence to the overall narrative of the Government's case.  Id. at 653 ("Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw inferences, whatever they may be, necessary to reach an honest verdict.").

Unlike Old Chief, child pornography is graphic evidence that has force beyond simple linear schemes of reasoning.  It comes together with the remaining evidence to form a narrative to gain momentum to support jurors' inferences regarding the defendant's guilt.  It provides the flesh and blood for the jury to see the exploitation of children.  The general, conclusory langauge of the stipulation that the videos "contain visual depictions of minors under the age of eighteen, engaging in sexually explicit conduct" does not have the same evidentiary value as actually seeing the particular explicit conduct of the specific minors.  Jurors have expectations as to the narrative that will unfold in the courtroom.  Id. at 654.  If those expectations are not met, jurors may very well punish the party who disappoints by drawing a negative inference.  Id.  For example, jurors expect to see a gun in the case of a person charged with using a firearm to commit a crime.  Id.  Likewise, the actual videos exploiting children in a child pornography case form the narrative that falls within the general rule stated in Old Chief. Moreover, the specific videos published – one of which the evidence showed was opened and previewed the morning of the search – reflected how likely it was that the defendant knew that the video depicted child pornography (which knowledge the stipulation did not mention).  We cannot say the trial court abused its discretion when it showed the jury three short excerpts from three of the seventeen different

6

videos of child pornography on defendant's computer.[1]

## II. Displaying Adult Pornography to the Jury

During the trial, the Government also introduced five adult pornography videos over the defendant's Rule 403 objection. The trial court allowed the Government to show excerpts from two of these videos to the jury.[2] First, the Government showed the jury a 20 second excerpt from the video that the defendant's computer was downloading as agents entered his home. The full length version of this video lasted 14 minutes and 49 seconds, and involved adult bestiality. At the defendant's request, the court gave this limiting instruction:

> "Ladies and gentlemen of the jury, the government wants to show a 20-second clip of the film that was being downloaded at the time the Department of the Army criminal investigation agent showed up at the quarters of Mr. Caldwell. It is being shown for a very limited purpose. To summarize, the limited purpose is this: It is shown because the government wants to establish that there was no mistake or unintentional aspect to the downloading of the pornographic films.
>
> Mr. Caldwell is not being charged with downloading obscene adult pornography. So this item of evidence is not being shown to you to show that he had done anything illegal by possessing that kind of pornography. It is simply being shown for the government to establish that he deliberately and intentionally downloaded that type. In other words, that he knew how to use the LimeWire to do that as shown by the fact that this was

---

[1]We further note that the district court carefully and at some length instructed and queried the jury panel on voir dire not to allow any hostility or aversion they might have to pornography or child pornography to prejudice their consideration of the evidence or to in any manner influence or incline them not to in all respects follow the court's instructions and, among other things, not to fail to afford the defendant the presumption of innocence and not to make any finding of guilt except as based solely on in-court evidence establishing guilt beyond a reasonable doubt.

[2]Otherwise, none of these adult pornography videos was published to the jury.

7

happening as the agents came.

Do you understand that?  If any one of you doesn't understand that, please raise your hand, because this limiting . . . instruction is important just to – out of an overabundance of caution.  Every other item of evidence that is admitted into evidence, you can use for any purpose.  In other words, you can use . . . for what it shows and for any reasonable inference you can draw from it, you see.

But this one, I am telling you, specifically, what is the narrow purpose that I am allowing the government to show the 20-second clip."

At this point, the trial court asked both parties if either wanted additional instructions.  Both agreed no additional instructions were necessary.

Second, the Government selected a similarly brief excerpt from a twenty minute video, entitled, "Beastiality-sisters [sic] 300 Farmcum.com zoophilie horse sex blowjob cumshotdog.mpg"  The lower court gave the jury the following limiting instruction before playing the excerpt to the jury:

"Ladies and gentlemen, the same issue with respect to the viewing of this film.  This is an adult pornography obscene material.  Mr. Caldwell is not being charged with anything having to do with that.  However, it is being shown to you for the purposes of establishing lack of intent or mistake at the time that that was being – that that was downloaded.

You may recall that I showed you – I allowed the showing of the first one because that was the one that – was one of the films that he had downloaded or was in the process of downloading at the time that the search warrant was executed.  This is a similar film but downloaded using the same software, LimeWire, at a different point in time."

The record reflects that this particular adult pornography video first came onto Caldwell's computer on September 20, 2005, and was most recently

8

accessed on November 4, 2005.  Further, the child pornography video which was accessed on November 7, 2005, before the agents arrived, first came onto Caldwell's computer on September 21, 2005.

The defendant complains on appeal that the trial court allowed the Government to publish the excerpts of the already admitted videos to the jury; he does not complain of their admission into evidence itself.  Caldwell relies on two cases and contends the trial court abused its discretion under Rule 404(b) when it admitted and displayed the adult pornography.  See United States v. Grimes, 244 F.3d 375, 385 (5th Cir. 2001);  United States v. LaChappelle, 969 F.2d 632, 638 (8th Cir. 1992).   As noted in Grimes, the Fifth Circuit uses a two prong test to assess admissibility.  Grimes, 244 F.3d at 384 (citing United States v. Beechum, 582 F.2d 898 (5th Cir. 1978)).  First, we determine whether extrinsic offense evidence is relevant for non-general propensity purposes.  Id.  Second, if relevant, we conduct a balancing test under Rule 403 to ensure the unfairly prejudicial effect of the evidence does not substantially outweigh its probative value.  Id.

In Grimes, the court found sexually explicit narratives downloaded a year prior to the offense were still relevant.  Id. at 384–85 & n.18 (narratives involved sexual conduct between adults and minors).  Here, both of the videos in question satisfy the first prong of this test.  At the trial court,  the defense theory, argued in defense counsel's opening statement, was that Caldwell lacked knowledge of the child pornography.  In direct examination, Caldwell denied ever downloading or having any knowledge of any of the child pornography or bestiality videos.  Yet, the adult bestiality video, the excerpt of which was published to the jury, had just completed downloading from LimeWire onto Caldwell's computer when the federal agents entered the defendant's home.  In fact, testimony revealed the monitor of Caldwell's

9

computer was turned on, and this particular file downloaded on the monitor. Since no one other than the defendant was home at the time, the government could use this to show the defendant's knowledge under Rule 404(b). FED. R. EVID. 404(b).

The trial court appropriately conducted the Rule 403 weighing test. While the court in Grimes found the extrinsic offense evidence failed the second prong, Grimes is the exception, not the rule. Grimes, 244 F.3d at 385. The extrinsic offense evidence in Grimes involved gruesome violence, including young girls in chains, handcuffs, and other references to blood.[3] In the second case the defendant cites, LaChapelle, the court finds the extrinsic offense evidence prejudicial because the offense was committed when it was lawful to commit such acts. LaChapelle, 969 F.2d at 638. The Eight Circuit nevertheless found admission of the evidence harmless error. Id. In United States v. Layne, this court upheld the admission of other child pornography not charged in the indictment as relevant on the issue of the defendant's knowledge. 43 F.3d 127, 133–34 (upholding the trial court's decision to admit other child pornography, while excluding other adult pornography). The Layne decision turned on the need for the evidence to prove knowledge and the fact that the trial court scrutinized the evidence carefully, refused to admit all of the evidence that was offered, and gave an appropriate limiting instruction. Id. at 134.

Here, the record contains a fourteen page discussion between the court and the parties about the nature of the evidence, the purposes it was offered

---

[3]"The narratives . . . depict violent rapes and moderate torture . . . The narratives are vile in their graphic and violent nature: young girls in chains, a young girl in handcuffs, and references to blood, for example. Perhaps on retrial the government can redact a different portion of the narratives and attempt to reintroduce them . . . ." Id.

for, and the potential prejudicial effect.  Before allowing the jury to see the very brief portions of two of the many admitted adult pornography videos, the trial court gave the jury two limiting instructions.  Beyond its probative value for knowledge, the video that downloaded as federal agents searched the defendant's home has additional probative value as an integral part of the charged offense.  See United States v. Coleman, 78 F.3d 154, 156 (5th Cir. 1996); United States v. Wilson, 578 F.2d 67, 72 (5th Cir. 1978) (often called res gestae).  The story of the raid and search of the defendant's home would remain incomplete without telling the jury the evidence the agents found downloading on the same program that was used to download child pornography.  Further, the trial court carefully considered the evidence, and allowed the jury to see only a short portion of much longer videos.  Up to that point in the trial, the agents had testified as to the content of all of the bestiality videos without objection.  This court finds no error in showing the jury the brief excerpt of the video found downloading as the search occurred.

We find, however, the brief portion of the adult video downloaded on September 27, 2005, weeks prior to the arrest, more troubling.  While the prejudicial nature of the video excerpt is clear, we have difficulty in finding much significant probative value in publishing this brief excerpt to the jury.  However, the video was downloaded to Caldwell's computer well within the period alleged in the receipt count on the same program as that from which the child pornography was downloaded on September 21, 2005, and it was last accessed on November 4, 2005.  The video was relevant to show a lack of accident or mistake in reference to both the adult and the child pornography videos viewed November 7.  Significantly, the record does reveal overwhelming evidence against the defendant.  For example, he argues that a trojan virus downloaded the child pornography without his knowledge or

11

consent.  Yet, even though the defendant left his computer on with LimeWire running and connected to the internet, when he went on a week's out of state vacation, no child pornography was downloaded, but pornography downloading resumed the day he returned.  Moreover, as noted, the agents had already testified as to the content of these videos without objection.  Given the evidence, the abuse of discretion standard, and the limiting instruction, this court finds that any error in this respect was harmless.  Cf. Coleman, 78 F.3d at 156 (even where there is an abuse of discretion under 403(b) the error is not reversible if harmless).

## III.  Alleged Expert Testimony

Because of the complexity of the technology, the Government called Felix Berger, an employee of LimeWire, LLC, to explain how the program works and how an individual would use the program.  Caldwell moved in limine to suppress any expert testimony that Mr. Berger might give because he has not been designated as an expert as required by FED. R. CRIM. P. 16(a)(1)(G).  The United States explained that he would only give factual testimony: how LimeWire works and what a person would see when they turn on and use the program.  The defense agreed that this type of testimony would be factual, which rendered the motion moot.  At trial, the Government called Berger to the stand.  He explained how an individual downloads and installs the LimeWire program.  He also described how users go about finding files on the LimeWire program.  Mr. Berger defined certain terms and how certain buttons on the program functioned.  He showed the jury how a user uploads and downloads files to and from other LimeWire users.  Near the end of his direct examination, Mr. Berger answered two questions that the defense now characterizes as expert testimony:

Q.  Is it possible for somebody else with LimeWire to send you a

video file that you haven't searched for?

A. No, it can't.

Q. Is it possible for another computer user on the internet to send you and download into your shared folder a file you haven't searched for?

A. No, they cannot.

The defense made no objection to this testimony at trial. On cross-examination, the defense questioned him further about this subject. They asked Mr. Berger whether a trojan could overtake the LimeWire program. In cross, the following dialogue occurred:

Q. . . . [Is there] a warning system to tell the user that LimeWire was being overtaken by a trojan?

A. I could only speculate what that feature actually is and what it actually means, because those terms are very – I don't really know what that feature is, but it could be.
. . . .

Q. Would it be fair to say that there's other people at LimeWire that would know about this particular feature, correct?

A. Exactly. If I can explain, there is a huge code base, several hundred thousand lines of code, so I would have to always make myself familiar with the certain area, which I could do.

The prosecutors' representation that Berger would be a lay witness does not rise to the level of plain error required for reversal. Berger's testimony did not clearly or obviously go beyond explaining how LimeWire works, which is what the Government had said he would testify to. Here, nothing about the prosecutors statements in the motion in limine mislead the defense into withholding objection once the assertedly objectionable testimony was put before the jury. The prosecutor stated Berger would testify as a lay witness.

13

When Berger's testimony made the defense aware of a possible objection, the defense decided not to timely object. Further, the objection on appeal is to only two, isolated questions and answers elicited by the Government. The defense delved into similar, but defense favorable testimony, on cross examination. Finally, the defense called its own expert to throughly discuss this testimony.[4] Thus, any misrepresentation by the Government cannot have affected the defendant's substantial rights nor seriously affect the fairness, integrity, or public reputation of judicial proceedings. See United States v. Hitt, 473 F.3d 146, 161 (5th Cir. 2006).

The defense also argues that this court should find plain error in the trial court's admission of Berger's testimony. The Supreme Court defines plain error synonymously with clear or obvious error. United States v. Olano, 507 U.S. 725, 734 (1993). Rule 701 allows lay opinions by witnesses so long as the witness does not base his or her opinion on scientific, technical or other specialized knowledge within the scope of Rule 702. FED. R. EVID. 701. The Advisory Committee Notes to the 2000 Amendment of Rule 701 explain that lay testimony results from a process of reasoning familiar in every day life, whereas expert testimony results from a process of reasoning which can only be mastered by experts in the field. FED. R. EVID. 701 advisory committee's

---

[4]We also note that the Government's computer expert, Agent Kunze, who examined Caldwell's computer, testified that there was no trojan that was responsible for any of the child pornography found on the defendant's computer. Kunze also testified that examination of the defendant's computer revealed three LimeWire requests to other LimeWire users requesting the particular child pornographic videos which were found on the defendant's computer. The defense expert, Young, testified that a trojan of some kind could "take over" the LimeWire program so as to cause a computer to receive LimeWire videos it had not requested. Young also stated that a trojan was found on defendant's computer, that an anti-virus program on the computer had located the trojan at 2:00 a.m. September 7, 2005, and that program may or may not have then rendered the trojan thereafter inoperable. Young could not say whether or not a trojan had anything to do with the child pornography videos which were found on defendant's computer being there.

14

note; Yanez Sosa, 513 F.3d at 200 (adopting the reasoning in the Committee notes).

The case law is not completely clear on where to draw the line between expert and lay testimony. For example, in United States v. Soto-Beniquez, the First Circuit upheld a lower court decision to allow the testimony of two pathologists, despite the Government's failure to designate them as experts, when the Government informed the defense before trial that both would testify to several autopsies and provided defendants with copies of the autopsy reports. 356 F.3d 1, 37–38 (1st Cir. 2004); see also Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1124 (10th Cir. 2005) ("A mathematical calculation well within the ability of anyone with a grade-school education is . . . more aptly characterized as a lay opinion").

In contrast, this court in Doddy v. Oxy USA, Inc., held testimony about the toxicity of chemicals was not lay opinion because it required specialized training and experience. 101 F.3d 448, 460–61 (5th Cir. 1996). The trend in the circuits seems to turn on whether the testimony falls within the realm of knowledge of the average lay person. E.g., United States v. White, 492 F.3d 380, 403–04 (6th Cir. 2007); United States v. Garcia, 413 F.3d 201, 215–16 (2d Cir. 2005) (DEA agent's testimony was not opinion informed by the reasoning processes familiar to the average person). In United States v. White, the Government put on the testimony of several Medicare auditors in a Medicare fraud case. Id., 492 F.3d at 399. The Sixth Circuit explains that the distinction between lay and expert witness testimony is far from clear, especially in cases where a witness with specialized knowledge also has personal knowledge of the factual underpinnings of the case. Id. at 401. The court concludes that the Government should have qualified the witnesses as experts because their knowledge of the Medicare system far exceeded the

15

average lay person.  Id. at 403.  The court found the error harmless partially because the bulk of the witnesses' testimony was factual.  Id. at 405.

Like White, it's difficult to say that Berger's testimony was clearly expert testimony.  With the prevalence of computer technology, it is not unreasonable to argue this type of information would fall within knowledge of the average lay person.  The defendant himself testified to the same type of information.  Furthermore, whether LimeWire allows the user to download files not specifically requested concerns how the program works.  In contrast, the questions the defense asked, such as how a trojan may interact with LimeWire, go beyond that.  The testimony elicited by the defense is closer to expert testimony than is the testimony of which it complains.

We hold that the trial court did not commit plain error in admitting the testimony of Felix Berger, and that error, if any, in this respect did not seriously affect the fairness, integrity or public reputation of judicial proceedings.

## CONCLUSION

The trial court did not abuse its discretion when it allowed the jury to see small segments of child pornography found on the defendant's computer.  While the adult pornography is a closer call, given the abuse of discretion standard, we afford the lower court some discretion in it's evidentiary ruling and find any error was harmless.  Finally, the admission of Felix Berger's testimony was not plain error.

## AFFIRMED