# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2026

Lyle W. Cayce
Clerk

No. 24-60277

United States of America,

*Plaintiff—Appellee*,

*versus*

Toshemie Wilson,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:22-CR-77-1

_____

Before Richman, Duncan, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Appellant Toshemie Wilson was convicted of eight counts of sexually exploiting children in violation of 18 U.S.C. § 2251(a). He appeals his conviction on three grounds, claiming the district court erred by permitting a lay witness to provide expert testimony and that the trial evidence was insufficient to sustain his convictions on the interstate-commerce and purpose elements. We AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60277

I

Wilson was a Mississippi high school teacher from 2005 until 2022. In late 2020, a former student made sexual-misconduct allegations against Wilson. Investigators confronted Wilson, who denied any wrongdoing and permitted a search of his cellphone. That search uncovered, among other things, a sexually explicit video of Wilson and a former student in a storage shed.

Six months later, investigators obtained and executed a search warrant for Wilson's home. They recovered a video camera, several mini-tapes, and an HP Pavilion tower ("desktop computer") from Wilson's bedroom. Five of the recovered mini-tapes had sexually explicit videos of two of Wilson's former students. The tapes were labeled with the student's name, the date, and sometimes a description of the recorded acts, like "Masturbation" or "New Doll Research." On Wilson's desktop computer, investigators found several thumbnails[1] of a deleted video of another former student masturbating.

Wilson was arrested and charged with ten counts of sexual exploitation of a child under 18 U.S.C. § 2251(a). Before trial, investigators met with Wilson, who admitted that he had "additional evidence that needed to be turned over." Wilson disclosed that he had kept sexually explicit material of children on a hard drive that "he had thrown . . . away" before the search. He agreed to turn over his personal laptop, which he had used to access that drive. Although investigators did not find any incriminating

---

[1] "A video thumbnail is a still image that acts as the preview image for your video." Ryan Knott, *What Are Video Thumbnails and Why Do They Matter?* (Aug. 4, 2023), https://www.techsmith.com/blog/what-are-video-thumbnails/. Wilson had deleted videos from his desktop computer prior to its confiscation, but the forensics team discovered thumbnails for some of the deleted videos.

No. 24-60277

videos saved on the laptop, they did confirm that Wilson had previously connected it to an external drive named "FreeAgent Drive (I:)," which he confirmed was the drive where he had kept "underage sexual material."

As trial approached, the Government dismissed two counts. The remaining eight counts involved seven victims. To protect their identities, each victim was referred to at trial by a number. The chart below maps the victim numbers to the relevant counts.

| Victim Number | Counts |
|:---:|:---:|
| 1 | 1, 2 |
| 2 | 3 |
| 3 | 4 |
| 4 | 5 |
| 5 | 6 |
| 8 | 9 |
| 9 | 10 |

At trial, the Government presented a mix of evidence to support each count. The interstate-commerce element for all counts was supported by the lay testimony of Special Agent Molly Blythe, who explained what was found on each recovered device and where the various recording/storage devices were manufactured. Wilson repeatedly objected to Agent Blythe's testimony as impermissible, claiming it involved expert forensics testimony on unrecovered devices she had never personally seen.

For the substantive elements, the Government supported counts 1, 2, and 5 with victim testimony and recovered videos or thumbnails. It supported counts 3, 4, 6, 9, and 10 only with victim testimony. The specifics for each count follow.

No. 24-60277

*Counts 1, 2 (victim 1)*:

Victim 1 testified that Wilson had him masturbate on camera and penetrate a blow-up doll when he was seventeen. These acts were recorded on four Sony mini-tapes recovered from Wilson's bedroom closet. Agent Blythe confirmed that Sony mini-tapes were not manufactured in Mississippi.

*Count 3 (victim 2)*:

Victim 2 testified that Wilson paid him to masturbate on camera when he was seventeen. Victim 2's acts were similarly recorded on a Sony mini-tape recovered from Wilson's bedroom closet. Agent Blythe's testimony on Sony mini-tapes applied here too.

*Count 4 (victim 3)*:

Victim 3 testified that Wilson paid him and Victim 5 to masturbate on camera the same day when Victim 3 was fifteen. These acts were recorded in Wilson's guest bedroom on an "early to mid 2000's video camera standing on a tripod" that could be "h[e]ld up to your eye" that also featured "a flip out" screen. Victim 3 also confirmed his identity in a photo Wilson took of him and Victim 5 naked in a hotel bed. The Government asked the jury to consider the totality of evidence presented and conclude that the interstate-commerce element was met given that none of the other identified devices were produced in Mississippi.

*Count 5 (victim 4)*:

Victim 4 testified that Wilson paid him to masturbate on camera repeatedly from when he was fourteen until he was twenty-three. These acts were recorded at school, in Wilson's office, at Wilson's home, and at a Wal-Mart. They were recorded on handheld camcorders, an Android cell phone, and a GoPro camera. Victim 4 was the victim who reported Wilson's

sexual misconduct. The two had a dispute once over services and payment, and Wilson held a knife to his throat and threatened his life. Agent Blythe testified that Android cell phones were not manufactured in Mississippi.

*Count 6 (victim 5)*:

Victim 5 testified that Wilson paid him to masturbate on camera multiple times when he was under eighteen. Victim 5 used an "iPad-type tablet" from Wilson in "the handicap bathroom at the high school" to record one such video. Thumbnail images of the act were found on Wilson's desktop computer, which Agent Blythe testified had the trade inscription "Made in Mexico."

*Count 9 (victim 8)*:

Victim 8 testified that he recorded several videos of himself masturbating for Wilson in various locations when he was fourteen years old. Victim 8 also noted that Wilson took pictures and videos of him masturbating using "Nikon," "Canon," or Sony-type video cameras. Agent Blythe testified that none of these devices were manufactured in Mississippi.

*Count 10 (victim 9)*:

Victim 9 testified that Wilson paid him to masturbate in a Wal-Mart bathroom when he was sixteen. Wilson provided him with a Motorola cell accidentally deleted the footage before returning the phone. Agent Blythe testified that Motorola cell phones were not manufactured in Mississippi.

After hearing from the investigating agents, each victim, and Agent Blythe, the prosecution rested. The defense moved for a judgment of acquittal for insufficient evidence under Federal Rule of Criminal Procedure 29, which the district court denied. Wilson presented nothing in his defense. The jury found Wilson guilty on all eight counts. He was sentenced to 192 years' imprisonment with lifetime supervised release. Wilson appeals.

No. 24-60277

## II

We review "preserved objections regarding the admission of expert or lay testimony for abuse of discretion, subject to harmless error analysis." *United States v. Hill*, 63 F.4th 335, 355 (5th Cir. 2023) (quotation omitted). The standard of review for sufficiency-of-evidence claims depends on whether a claim was preserved. *United States v. Capistrano*, 74 F.4th 756, 766 (5th Cir. 2023). To preserve such claims, a defendant must move for judgment of acquittal after all the evidence has been presented. *United States v. Buchanan*, 485 F.3d 274, 283 (5th Cir. 2007). Because Wilson did so, we review his sufficiency-of-evidence claims *de novo. United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007).

## III

Wilson appeals his conviction on three grounds. First, he argues the district court erred by permitting Agent Blythe to provide expert computer-forensics testimony as a lay witness. Second, he claims the evidence was insufficient to support the interstate-commerce element for each count. Third, he contends the evidence was insufficient to prove Wilson produced these videos for the purpose of child exploitation rather than for research. We consider each argument in turn.

### A

We begin with Agent Blythe's testimony.

The bounds of permissible lay-witness testimony are governed by Federal Rule of Evidence 701. Such testimony is limited to what is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. "[T]he distinction between lay

6

and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." FED. R. EVID. 701 advisory committee's note to 2000 amendment (quotations omitted).

Our precedent acknowledges that permissible lay testimony may include explanations of basic computer functions and software. In *United States v. Caldwell*, a software-company employee testified how its peer-to-peer sharing program worked and what users would see when interacting with the program. 586 F.3d 338, 346–47 (5th Cir. 2009). The testimony was proffered to help the jury understand what actions the defendant had to take within the program to download and share the files relevant to his conviction. *Ibid.* We ruled the testimony was permissible because it did not go beyond explaining how the program worked. *Id.* at 348. We also noted that given "the prevalence of computer technology, it is not unreasonable to argue this type of information would fall within knowledge of the average lay person." *Ibid.*

We have also permitted investigating officers to provide lay testimony on the data extracted from a defendant's devices using electronic-forensics software. *See United States v. Williams*, 83 F.4th 994 (5th Cir. 2023). The investigating officer testifying in *Williams* explained how he extracted data from the defendant's cellphone and what he found when reviewing the data. *Id.* at 996. Finding that the officer's testimony did not go beyond "the knowledge of an average cell phone user," we held that the district court "properly ruled that Rule 701 governs here." *Id.* at 997–98.

Wilson challenges three topics of Agent Blythe's testimony: her conclusions about Wilson's external drive, the thumbnails of Victim 5 from Wilson's desktop, and the manufacturing origins of various electronic

recording devices. In Wilson's view, Agent Blythe's testimony on these topics "ventured into forensic territory," requiring specialized analysis that rendered this testimony impermissible under Rule 701.

We disagree. Agent Blythe's testimony on each topic falls comfortably within our precedent and the limits of Rule 701.

Starting with the external drive, Agent Blythe's testimony was modest. She explained that the investigators found evidence of the drive in the data extracted from Wilson's laptop and discussed a conversation she had with Wilson about it. Agent Blythe testified that they showed Wilson a screenshot of the drive and its files and asked him where it was. Wilson confirmed this was the "hard drive that he kept the underage sexual material on" and had "got[ten] rid of prior to the search." Agent Blythe then explained that she performed an internet search of the drive based on its name (Free Agent Drive (I:)), located its manufacturer (Seagate), and confirmed based on publicly available information that the device was not manufactured in Mississippi. Given "the prevalence of computer technology, it is not unreasonable to argue" that information deduced from what amounts to a Google search "would fall within knowledge of the average lay person." *Caldwell*, 586 F.3d at 348. The district court properly allowed this testimony under Rule 701.

The same is true for the thumbnails of Victim 5. Agent Blythe testified only about what she found, where she found it, and what that meant for interstate-commerce purposes. She explained that they found nineteen thumbnails in the cache[2] of Wilson's desktop computer in the deleted files

---

[2] A "cache" is defined as "a computer memory with very short access time used for storage of frequently or recently used instructions or data." *Cache*, Merriam-Webster, https://www.merriam-webster.com/dictionary/cache (last visited Mar. 9, 2026).

section. Both she and Victim 5 identified Victim 5 in the thumbnails, and Victim 5 confirmed the thumbnails were for a video he made for Wilson when he was under eighteen. Given the desktop computer's trade inscription "Made in Mexico," Blythe testified that the interstate-commerce element was met for count 6. Like the officer in *Williams*, Agent Blythe merely described what she found in the defendant's extracted data, offering no testimony on her "technical understanding of the machine or software" used for extraction. *Williams*, 83 F.4th at 996. As a result, we find that the district court "properly ruled that Rule 701 governs here." *Id.* at 998.

We conclude the same for Agent Blythe's testimony on device brands and manufacturing locations for the other recovered and unrecovered devices. She testified that she performed Google searches of the identified brands or models, reviewed publicly available information, and concluded that none were manufactured in Mississippi. Such testimony falls comfortably within the bounds we described in *Caldwell*.

In sum, the district court did not err by permitting Agent Blythe's testimony under Rule 701.

B

We turn to Wilson's claim that the evidence was insufficient to support the interstate-commerce element of his convictions.

For preserved insufficiency-of-evidence claims, we "will uphold the jury's verdict if a rational trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt." *United States v. Green*, 47 F.4th 279, 287 (5th Cir. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The evidence and any reasonable inferences drawn from it are viewed in the light most favorable to the verdict. *Ibid.* "The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt,

so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Moser*, 123 F.3d 813, 819 (5th Cir. 1997). In undertaking this review, we do not "reweigh the evidence or assess the credibility of witnesses, as this is the responsibility of the jury." *Green*, 47 F.4th at 287–88.

Wilson argues that the Government could not meet its burden on the interstate-commerce element through victim testimony alone. Instead, Wilson believes that our precedent requires a combination of physical evidence—the electronic recording and storage devices—and victim testimony to support each count.

Wilson misreads our precedent. To be sure, he cites several cases in which we affirmed convictions supported by victim testimony and the recovered physical devices themselves.[3] But Wilson confuses a sufficient evidentiary showing with a necessary one. None of these cases holds that witness testimony identifying the relevant recording devices would have been legally insufficient.

More to the point, Wilson was free to discredit the veracity of such testimony on cross examination. The jury evidently believed the victims, however. We cannot usurp the jury's role in assessing witness credibility. *See ibid.* We can decide only whether the Government presented sufficient evidence to support the interstate-commerce element for each count. It did.

Agent Blythe provided substantial, overlapping ways for the jury to conclude the interstate-commerce element was met for each count. She testified that Sony mini-tapes were manufactured outside Mississippi. She

---

[3] *See United States v. Looney*, 606 F. App'x 744 (5th Cir. 2015); *United States v. Dickson*, 632 F.3d 186 (5th Cir.), *cert. denied*, 563 U.S. 1028 (2011); *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).

further testified that Wilson's desktop computer was manufactured in Mexico and that his laptop was manufactured in China. The jury was free to conclude, given all the evidence presented, that some, none, or all of the recorded videos were at one time played on or copied to those devices.

For the unrecovered devices, Agent Blythe likewise researched the manufacturers of every brand identified by the victims and testified that none of those devices was manufactured in Mississippi. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that "a rational trier of fact could conclude from the evidence that the [interstate-commerce element] w[as] established beyond a reasonable doubt." *Id.* at 287; *see also United States v. Holston*, 343 F.3d 83, 89 (2d Cir. 2003) (citing *United States v. Rodia*, 194 F.3d 465, 473 (3rd Cir. 1999)) (noting the "limiting jurisdictional factor [for § 2251] is almost useless here, since all but the most self-sufficient child pornographers will rely on film, cameras, or chemicals that traveled in interstate commerce").

## C

Finally, we evaluate Wilson's claim that the evidence was insufficient to show he acted with the purpose of producing a visual depiction of a minor engaged in sexually explicit conduct. Instead, Wilson asks us to conclude that he produced these videos "to conduct research," pointing to his filename convention and to how several victims testified that Wilson told them the videos were for research.

Wilson's argument fails. To evaluate whether § 2251's purpose element was met involves two questions: "Did the production involve the use of a minor engaging in sexually explicit conduct, and was the visual depiction a depiction of such conduct?" *United States v. Steen*, 634 F.3d 822, 826 (5th Cir. 2011). To determine whether the recorded conduct is sexually explicit, we consider the *Dost* factors:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Ibid.* (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd*, 813 F.2d 1231 (9th Cir. 1987) (unpublished table decision)).

All factors point to the same conclusion: Wilsons's videos of minors masturbating on camera and penetrating blow-up dolls involve sexually explicit conduct. The focal point of each video is on the child's genitalia. Videos of masturbating are sexually suggestive. Wilson posed the children unnaturally. The children were nude. Each visual depiction suggests a willingness to engage in sexual activity. And the depictions seek to elicit a sexual response in the viewer. Nothing in the evidence—besides Wilson's self-serving testimony—suggest the videos were created for any other purpose. Accordingly, we conclude the evidence was sufficient to support the purpose element of Wilson's conviction.

IV

Wilson's conviction is AFFIRMED.