# United States Court of Appeals
## For the First Circuit

No. 15-1460

UNITED STATES OF AMERICA,

Appellee,

v.

KEVIN LEE ROSS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, U.S. District Judge]

Before

Torruella and Barron, Circuit Judges,
and Lisi,* District Judge.

Jane Elizabeth Lee, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

September 14, 2016

---

* Of the District of Rhode Island, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Following a two-day jury trial in the United States District Court for the District of Maine, defendant-appellant Kevin Ross was found guilty of one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).  Before trial, Ross sought to exclude from evidence six images and three videos of child pornography found on his computers and hard drive on the basis that the inflammatory nature of these materials risked unfairly prejudicing the jury against him under Federal Rule of Evidence 403.  He contended that, because he was willing to stipulate that his computers contained child pornography, these images were of minimally probative value.  The district court denied Ross's request without viewing the challenged evidence.  On appeal, Ross asserts that the district court committed reversible error when it declined to view the evidence before allowing its admission and by admitting these materials.  We affirm.

## I.

In July of 2011, United States Postal Inspector Scott Kelley was monitoring a peer-to-peer network known as the Gnutella network and discovered that an Internet Protocol ("IP") address from Maine was sharing files with hash values[1] indicative of child

---

[1]  Kelley explained that a hash value is a "unique series of numbers and letters" associated with a file that acts "almost like

pornography. Kelley connected to the IP address and downloaded nine files which proved to contain child pornography. Kelley later learned that this IP address was assigned to the subscriber Kevin Ross at an address in Penobscot, Maine. Ross had joined his mother, Madeline Ross, at this address in 2011, after his father fell ill, and continued to live there after his father's death in April 2011.

On July 25, Kelley obtained a search warrant for the Ross residence. He executed the warrant with several law enforcement officers on July 26. Ross was the only individual in the home at the time of the search. During the search, Chief of the Belfast Police Department Michael James McFadden and United States Postal Inspector Michael Connelly investigated the basement. There, they found a laptop playing a video in which a "young female, probably under the age of 2, [was] engaged in full intercourse with an adult male." The agents seized the laptop and the laptop's internal hard drive, a desktop computer and the desktop's internal hard drive, an external hard drive, and thumb drives from the basement. Despite having removed "all of the Internet devices" from the residence, on August 10, McFadden discovered that the same IP address was still being used to access

---

a DNA strand."

child pornography, and officers returned to Ross's residence to conduct a search. They were unable to find any devices capable of connecting to the Internet and did not learn how anyone could have accessed the Internet from Ross's residence after the initial search.

Ross was charged with one count of knowingly possessing child pornography under 18 U.S.C. § 2252A(a)(5)(B) and proceeded to a two-day jury trial. Prior to trial, the Government indicated that it intended to introduce two images and one video each from Ross's laptop and desktop hard drives and his external hard drive, for a total of six images and three videos. Ross moved to exclude these materials. He contended that, because he was willing to stipulate that the videos and images contained child pornography, "[a]ny probative value that remains in showing this material is slight and substantially outweighed by the prejudicial quality of the evidence" under Federal Rule of Evidence 403. In the motion, Ross described the images and videos as "graphic and disturbing" such that they risked "creat[ing] an emotional or visceral response with the jury."

The district court denied the motion "[g]iven the limited number of actual images or videos to be proffered by the Government." But the district court noted:

> [T]he Court has not viewed any of the images or videos, and the Third Circuit suggested in [United

-4-

<u>States</u> v. <u>Cunningham</u>, 694 F.3d 372 (3d Cir. 2012)] that, if contested, a trial judge should actually view the child pornography before admitting it. If defense counsel believes that the exhibits selected by the Government are too extreme and do not fairly represent what was on the computer, the Court will investigate further, view the proffered exhibits, and rule on any specific objections that Mr. Ross wishes to press. In other words, if there are specific objections by Mr. Ross that the Government's images and videos do not fairly represent the pornography on the subject computers or that they are particularly inflammatory, the Court will resolve this issue after having seen the proffered evidence outside the presence of the jury.

On the first day of trial, the district court repeated this request:

**The Court**: And the one issue that is still outstanding, I think, is whether or not the defendant contends that any of the images that the -- that the government proposes to introduce, given the parameters of the order itself, still fall as inadmissible under Rule 403. In other words, do you want me to review those images before they're introduced?

**[Ross's Counsel]**: Your Honor, I don't think the images misrepresent the type of material that was recovered from the computer. So for that reason, I would say the court doesn't need to -- to review the images.

At trial, Ross did not dispute that the computers and hard drives contained child pornography, instead arguing that someone else had used his IP address and computers to access the materials. He emphasized that his IP address continued to access child pornography after the computers were removed from his home and that forensics reports obtained by the Government showed that

Ross's computer had accessed child pornography in May 2011, when he and his family were on vacation in Michigan.

In addition to calling several officers who had searched Ross's home to testify, the Government presented the testimony of Michael Scichilone, a computer forensic analyst with the United States Postal Inspection Service Digital Evidence Unit. He stated that he located "over a hundred images and 50 videos of what appears to be a female under the age of 18 conducting sexual activities with adult male[s] and in sexual poses" on the desktop hard drive and "thousands of images" and "about 50 videos" on the laptop hard drive, as well as thousands of images and videos on the external hard drive and thumb drives. Scichilone testified that Ross's external hard drive could not itself access the internet and that it would need to have been "physically connect[ed]" to a computer for these materials to be loaded onto it. Scichilone also presented extensive testimony that Ross's computers had been used to access websites offering child pornography and that many of the file names on Ross's devices contained terms such as "pedo," short for "pedophilia," and "PTHC," an acronym for "preteen hard core." During Scichilone's testimony, the Government presented the three videos and six images

now contested by Ross.[2]  Two of the videos are graphic depictions of adult males vaginally and anally raping children under the age of eight and the other depicts a five-year-old girl being forced to perform oral sex on an adult male.

The jury found Ross guilty, and Ross was sentenced to ninety months' imprisonment and five years of supervised release. Ross now appeals.

**II.**

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value it substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.  Ross contends that Rule 403 requires that the district court review the challenged evidence and, as a result, the district court

---

[2]  Ross contends that four videos were played and suggests that the two longest videos, with lengths of ten and sixteen minutes, respectively, were played in their entirety.  As the Government asserts, however, the record indicates that one of these videos (Exhibit 45) was not played for the jury, and that the other (Exhibit 46) was played for only a minute.  The record is less clear as to whether the remaining videos, Exhibits 43 and 48, were played in full.  (Indeed, there is no indication that Exhibit 48 was played at all, although the Government concedes that it was.).  In any case, these videos were only thirty-nine seconds and one minute and forty-three seconds in length, respectively.  In a footnote, Ross suggests that the record inaccurately portrays that the videos were presented for shorter amounts of time than they actually were.  While we acknowledge that the record could be clearer as to how long these videos were played, we find any such argument waived for lack of development.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-7-

erred in failing to view or otherwise obtain a description of the challenged materials before making an evidentiary determination. Because Ross waived this point by "intentional[ly] relinquish[ing]" the argument before the district court, he cannot now assert it on appeal. United States v. Olano, 507 U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Waiver is different from forfeiture, which occurs where "a party fails to make a timely assertion of a right." United States v. Sánchez-Berríos, 424 F.3d 65, 74 (1st Cir. 2005) (quoting United States v. Rodríguez, 311 F.3d 435, 437 (1st Cir. 2002)). Whereas a forfeited issue may be subject to plain error review, "a waived issue ordinarily cannot be resurrected on appeal." Id. (quoting Rodríguez, 311 F.3d at 437).

Ross never suggested in any document filed to the district court that the court should view the challenged evidence. Nevertheless, in its order and again before trial, the district court asked Ross whether he wanted the court to view the evidence, and Ross declined. Ross now contends that the district court was only asking whether it should view the materials for the limited purpose of determining whether they were representative of the subject matter of the images and videos found on the seized devices. The district court's order, however, asked whether Ross had objections that the materials "do not fairly represent the

pornography on the subject computers or that they are particularly inflammatory." The use of "or" indicates that the district court was not merely querying the representativeness of the proposed evidence, but also asking whether Ross had objections based on its graphic nature. And when the district court posed this question before trial, it asked whether "the defendant contend[ed] that any of the images . . . still fall as inadmissible under Rule 403?" Although Ross replied that that the images did not "misrepresent the type of material that was recovered from the computer," his answer does not narrow the scope of the district court's query, which more broadly concerned any potential objections under Rule 403. The district court placed this issue "squarely on the table," United States v. Acosta-Colón, 741 F.3d 179, 187 (1st Cir. 2013), and Ross stated, without equivocation, that "the court doesn't need . . . to review the images." His response "constitutes classic waiver, rather than forfeiture, which means that he cannot challenge the judge's ruling even as plain error." Id. Although we believe the better practice is for a district court to view challenged evidence (as distasteful as it may be) before making a ruling under Rule 403, we set aside the question of whether Rule 403 requires this step. In any case, the evidence against Ross was overwhelming, and any error was, at best, harmless.

We now turn to the analysis under Rule 403, which requires that a trial court exclude "evidence if its probative value is substantially outweighed by 'the danger of unfair prejudice.'" United States v. Varoudakis, 233 F.3d 113, 121 (1st Cir. 2000) (quoting Fed. R. Evid. 403). "In balancing the scales of Rule 403, it is important to note that only 'unfair' prejudice is to be avoided, as 'by design, all evidence is meant to be prejudicial.'" United States v. Morales-Aldahondo, 524 F.3d 115, 119-20 (1st Cir. 2008) (quoting Varoudakis, 233 F.3d at 122). Even where a party is willing to stipulate to a critical fact, "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." Old Chief v. United States, 519 U.S. 172, 186-87 (1997). We review the district court's Rule 403 determination for abuse of discretion. Morales-Aldahondo, 524 F.3d at 119.

Ross contends that, because he was willing to stipulate that his computers contained child pornography, the probative value of the evidence was so minimal that the district court committed reversible error by allowing its admission. To the contrary, the Government argues that the content of the images and videos was probative of Ross's knowledge that his devices contained child pornography, which Ross did not concede. We agree.

In his opening argument, Ross explained that he did not "dispute that someone, somehow was using the computer or the Internet address that was assigned to Kevin Ross' house to collect and access child pornography. But whoever that someone was, it wasn't Kevin Ross." He focused on the instances in May 2011, when his computer accessed child pornography despite his being away from Maine, and in August 2011, when McFadden discovered that his IP address was accessing child pornography although no devices capable of reaching the internet remained in his home.

As such, Ross's "proposed stipulation only went so far." United States v. Dudley, 804 F.3d 506, 517 (1st Cir. 2015). And, because knowledge was contested, the Government's evidence "served a valid, non-cumulative, purpose." Id. (quoting United States v. Eads, 729 F.3d 769, 778 (7th Cir. 2013)). The Government's limited use of three videos and six images, among the many thousands of videos and images on Ross's devices, demonstrated that Ross could not have somehow stumbled upon these items without immediately recognizing their graphic content, just as it was unlikely that Ross could have assumed that the many files with names indicative of child pornography on his computers were completely innocuous. The Government also presented the testimony of officers who saw a

-11-

graphic video playing on Ross's laptop during the search of his house immediately after finding Ross home alone.[3]

Similarly, the Government carefully presented evidence of browser histories and search terms to indicate that Ross's computers had been used to locate and view child pornography on numerous occasions and that his external hard drive and thumb drives, devices that could not independently access the internet, contained many images of child pornography. All in all, the Government's evidence demonstrated that this case was not an instance in which a few stray images were found on a single computer, but rather a scenario wherein multiple devices were being used continually to access and store thousands of highly graphic files. This account casts doubt on Ross's defense that someone else had hijacked his computers. "The court is not required to scrub the trial clean of all evidence that may have an emotional impact," Morales-Aldahondo, 524 F.3d at 120, and the district court did not abuse its discretion under Rule 403 in admitting a limited number of images and videos for the purpose of demonstrating Ross's knowledge.

---

[3] Ross develops no argument to us that, even if the evidence was probative in this way, it must still have been excluded.

-12-

## III.

Because the district court did not abuse its discretion in admitting the challenged evidence, we affirm.

**<u>Affirmed</u>.**