# United States Court of Appeals
## For the First Circuit

No. 24-1907

UNITED STATES OF AMERICA,

Appellee,

v.

KEVIN LEE ROSS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Montecalvo, Thompson, and Aframe,
Circuit Judges.

William L. Welch, III for appellant.

Lindsay B. Feinberg, Assistant United States Attorney, with whom Craig M. Wolff, Acting United States Attorney, was on brief, for appellee.

April 2, 2026

**THOMPSON, Circuit Judge.** A jury in the United States District Court for the District of Maine convicted Kevin Lee Ross of one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Ross now seeks to undo his conviction, raising dual challenges to the district court's evidentiary determinations at trial -- both of which he premises on a joint stipulation (that we explain in detail below) between himself and the government. His grievances take aim at the district court's assessment under Federal Rule of Evidence 403, in which, despite the joint stipulation, the court (1) allowed the government to introduce and publish exhibits, the contents of which Ross had already stipulated to, and (2) allowed an agent who contributed to the investigation to describe the exhibits once admitted. All in all, we find that the district court did not err in allowing either evidentiary admission, and consequentially, we affirm. Read on to see our reasoning.

### Background

To the reader's benefit, we briefly recite the facts of the case, first summing up the highlights of a conviction Ross sustained in 2014 and continuing on to his trial and second conviction before us now. Because this case involves a claim of prejudicial evidentiary error, we'll provide a "balanced" rendition of the facts. See United States v. Burgos-Montes, 786 F.3d 92, 99 (1st Cir. 2015) (quoting United States v. Felton, 417

F.3d 97, 99 (1st Cir. 2005)). We reserve additional "details for our . . . discussion of specific issues." United States v. Montoya, 844 F.3d 63, 66 (1st Cir. 2016).

### A. Ross's First Conviction

Back in 2014, a jury in the District of Maine convicted Ross of one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). See United States v. Ross ("Ross I"), 837 F.3d 85, 87 (1st Cir. 2016). Ross was sentenced to a ninety-month term (totaling seven and a half years) of imprisonment and, upon his release, a five-year term of supervised release. He remained in prison until 2021 and began his term of supervision thereafter. Among his conditions of supervised release were a restriction on Ross's access to the internet, monitored usage of his internet-capable devices and storage media, and a requirement that he submit to random searches of his devices by the United States Probation Office ("Probation"). Probation found Ross compliant with these conditions in fourteen routine inspections between 2021 and 2023. Things seemed to be going well, but that changed dramatically.

During his supervised release term, in February of 2023, Ross lived with his two brothers, Mike and Scott, in Penobscot, Maine. But a fire in the basement of their home forced the trio to relocate. Initially, they wound up residing in a cottage in the same town, but eventually (around late March or early April)

secured a long-term rental in Ellsworth, Maine. Ross and Mike began moving their belongings to the trio's new home, while Scott chose to remain in the cottage until the lease agreement had expired. One day during this transition period, Ross and Mike went back to the cottage and, while there, Ross and Scott got into a heated spat (for reasons unclear to us). The feud resulted in Scott pointing a "boot gun"[1] at Ross while ordering him to "get the eff out of the cabin." Ross left and called law enforcement who subsequently arrived and (temporarily) confiscated Scott's gun.

Less than a month after this incident, Supervisory Probation Officer Ashley Hadam (the officer handling Ross's supervision) received a tip from Scott, informing her that Ross was in possession of two cell phones -- that is, one more cell phone than he was authorized to own.[2]

### B. Violation of Supervised Release

Based on Scott's 4-1-1, and consistent with the terms of Ross's supervised release conditions, Officer Hadam successfully submitted a request to her supervisor for permission to search

---

[1] A "boot gun" refers to a small, easily concealed firearm historically carried in a boot top for quick access.

[2] Following Scott's call, Probation Officer Hadam initiated a corrective process to update Ross's conditions of supervision due to what she deemed "outdated language" in the search condition regarding computer and internet monitoring.

Ross's person and his newly acquired Ellsworth home and possessions. On the day of the search, two additional Probation officers accompanied Officer Hadam to assist. Upon their arrival, the officers recovered Ross's approved cell phone in a pat down search. Thereafter, Officer Hadam waited with Ross and his brother Mike in the living room while the other officers searched the premises. Ross's bedroom turned up contraband -- a second cell phone (a Samsung Galaxy) located inside a trash bag, and marijuana and drug paraphernalia inside a different bag in the closet. After the officers regrouped in the kitchen, one powered on the unauthorized cell phone to place it in airplane mode, thereby preventing any remote manipulation of the device. Once it booted up, the officer scrolled through the phone (which was unprotected by a password) and observed what he described as a photo of a prepubescent minor with her legs spread apart and semen covering her vaginal area. Officer Hadam observed the photo, and she and the other officer confronted Ross about what they had found. Ross proclaimed that he'd never seen the phone before that moment. However, he did fess up to owning the drug paraphernalia.

Next the officers did a sweep of Ross's vehicle parked outside the home.[3] There, they discovered an Acer Aspire laptop

---

[3] Apparently, Ross acquired this vehicle from his mother's estate though Scott was registered as the vehicle's owner and insurer. Ross facilitated the search by providing the officers with a key to the vehicle.

and a Toshiba external hard drive inside a computer bag that was wrapped inside a trash bag. The officers questioned Ross about the devices, and as before, he denied having ever seen either device.

After their search concluded, the officers delivered the cell phone, laptop, and hard drive (collectively, the "three devices") to Special Agent Greg Kelly with Homeland Security Investigations to conduct a forensic examination. In due course, Agent Kelly's forensic examination yielded extensive results. The three devices, in combination, contained over 1,380 files of child sexual abuse material and child sexual exploitative material (collectively, "CSAM") covering multiple years of downloads. We'll refrain from getting into the specifics of that evidence until it becomes necessary in our discussion of the issues.

**Procedural History**

A grand jury in the District of Maine returned an indictment charging Ross with possession of child pornography across three devices over multiple years, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A). At his arraignment, Ross pleaded not guilty and opted for a jury trial. In the leadup to trial, the government provided Ross with a list of potential trial exhibits, which included nine of the CSAM files recovered from the three devices (two photos and one video from

each device).  A couple days prior to trial, the parties entered into several joint stipulations, one of which read as follows:

> Government [e]xhibits 33-35, 44-46, and 50-52 are images produced by using an actual person under the age of eighteen engaging in sexually explicit conduct.  These images of child pornography were produced using materials that have been mailed, shipped[,] or transported in interstate or foreign commerce.

Once trial commenced, the government, during its case in chief, called Agent Kelly to testify about his forensic search of the three devices.  He explained, without objection from Ross, the search method he used to conduct his examination, as well as the modes of operation for each device and how the technology he described was used to search for and store child pornography.  His examination, he stated, also revealed evidence of connectivity among all three devices, meaning, at some point, the Acer Aspire laptop found in the car interacted with both the Toshiba external hard drive from the car and the unauthorized Samsung Galaxy cell phone found in Ross's bedroom.

During Agent Kelly's testimony, the government moved to publish to the jury three of its nine total exhibits of CSAM found on the three devices.  Ross objected under Federal Rule of Evidence 403, arguing that the joint stipulation should prevent the government from displaying the files, and to rule otherwise, given the graphic images of children being sexually abused, would only

serve to inflate the jury's passions and prejudices. Unsurprisingly, the government disagreed and after referencing its trial brief which notified the court and defendant of its intent to seek admission of the files in dispute, it further added that it sought only to conservatively publish a snippet of the CSAM files discovered on the devices -- nine of the files -- and display them briefly, which was a small sampling relative to the large amount of CSAM found on the devices. Finding dispositive one of our court's previous decisions involving the same defendant (and his 2014 conviction mentioned above), the district court sided with the government, noting that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it." Ross I, 837 F.3d at 90 (citing Old Chief v. United States, 519 U.S. 172, 186-87 (1997)). Consequently, the court allowed the three files to be published.[4] As the trial proceeded, the government moved to

---

[4] On the next day of trial, the district court elaborated on its ruling. It noted that Ross's defense "was that someone else used the devices [to] download[] child pornography," and the "proposed stipulation only went so far because a conviction for . . . possession of child pornography requires demonstrating that the defendant knowingly possessed [the] material containing . . . child pornography and that the defendant knew that the material contained . . . child pornography." Relying on Ross I, the district court found the rationale in that case as to why the evidence "remain[ed] relevant despite the stipulation applie[d] with equal force" to the present case. Ross denied knowledge, and the government's limited display of images "demonstrated that Ross could not have somehow stumbled upon these

- 8 -

publish the six other CSAM files and Ross maintained his same objection to their admission.

Back to Agent Kelly. Also during his testimony, when discussing the materials he'd uncovered, Agent Kelly was asked to describe each of the nine files as the government put them on display for the jury.[5] Ross did not object to this testimony.

At the conclusion of trial, the jury deliberated for two days before arriving at a guilty verdict. Ross was later sentenced to 121-months' imprisonment for the underlying offense and a consecutive sentence of twenty-four months' imprisonment for violating his conditions of supervised release. Ross solely appealed his conviction (not his violation of supervised release), and here we are. So we flip the page to address his contentions.

**Discussion**

Ross asserts that the district court abused its discretion under Federal Rule of Evidence 403 by: (1) permitting the government to publish the nine exhibits of child pornography; and (2) allowing Agent Kelly to describe the exhibits through his

_____

items without immediately recognizing their graphic content." See Ross I, 837 F.3d at 91. Thus, "the probative value of evidence," as the district court concluded, was "not substantially outweighed by the risk of unfair prejudice."

[5] For instance, and representative of the other exhibits, Agent Kelly described one as an image "of a prepubescent child, female, forced to perform oral sex on an adult male until he ejaculates into her mouth."

testimony.  Ross premises his arguments on the fact that he'd already stipulated that the files met the legal definition of child pornography, thus making the additional evidence non-probative of a factual issue and unfairly prejudicial.

## A. Standard of Review

We review preserved evidentiary objections for abuse of discretion.  United States v. Maldonado-Peña, 4 F.4th 1, 29 (1st Cir. 2021).  We will vacate a conviction for a trial court's abuse of discretion in the admission of evidence unless we determine the error was harmless.  United States v. García-Sierra, 994 F.3d 17, 26 (1st Cir. 2021) (citing United States v. Brown, 669 F.3d 10, 24 (1st Cir. 2012); and Fed. R. Crim. P. 52(a)).  A harmless error is one that does not "substantially sway[]" the judgment.  United States v. Villa-Guillen, 102 F.4th 508, 515 (1st Cir. 2024) (quoting Burgos-Montes, 786 F.3d at 114).  Unpreserved objections generally garner what's known as plain error review.[6]  See United States v. Leoner-Aguirre, 939 F.3d 310, 320 (1st Cir. 2019); Fed. R. Crim. P. 52(b).  Ross timely objected to the publication of the

---

[6]  To survive plain error review, a defendant must ordinarily show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Castillo, 158 F.4th 257, 272 (1st Cir. 2025) (citing United States v. Encarnacion, 26 F.4th 490, 504 (1st Cir. 2022)).

exhibits at trial, so we'll analyze this portion of his challenges for abuse of discretion.

With respect to Agent Kelly's descriptive testimony, however, the government says Ross failed to "timely -- and specifically -- raise an evidentiary objection to preserve his . . . appellate rights," United States v. Castillo, 158 F.4th 257, 272 (1st Cir. 2025) (citation omitted), so plain error should apply. In his reply brief, Ross says that his challenge to Agent Kelly's testimony describing the images didn't require a separate objection from those aimed at displaying the child pornography exhibits because the images and descriptions are "part and parcel" of one another. Regardless of whether he properly preserved his objection to Agent Kelly's testimony, so says Ross, his challenge would pass muster under plain error review.[7] We are dubious of

---

[7] Under plain error review, Ross's pertinent arguments are as follows: (1) The district court failed "to recognize the parties' stipulation, discount the probative value of each narration for what" the stipulation had already proved, then weigh the discounted-value of Agent Kelly's testimony against unfair prejudice; (2) the error was clear and obvious because the parties' filed the joint stipulation two days before trial, and the court instructed the jury that no additional evidence was "need[ed] apart from the stipulation"; (3) his Sixth and Fourteenth Amendment rights are substantial and were affected by unfairly admitting the testimony; and (4) Agent Kelly's description of the child pornography, coupled with displaying the graphic images, "impaired the fairness, integrity, and public reputation of the proceeding, because it only invited rendering a verdict on an improper emotional basis."

Ross's position.[8]  However, given that Ross's challenge fails even under abuse of discretion review, we'll examine his second challenge under the more appellant-friendly standard.  We now resolve Ross's arguments in turn.

## B. Publication of the Exhibits

Focusing our gaze on Ross's strike at the government's publication of the files, he argues that, because the government had no need to prove the content of the exhibits given that he'd already stipulated that the nine files contained CSAM materials, displaying sexually explicit images of children lacked probative value and served only to inflate the jury's prejudices against

---

[8]  Ross's objections at trial occurred in response to the government's motions to admit the exhibits.  Specifically, when the district judge asked whether Ross had an objection, he stated, "[w]e stipulated that they are child pornography, your Honor, so we object to them being shown."  And he made the "[s]ame objection[s]" to the government's subsequent motions to display the exhibits.  Though "our preservation policy is not ironclad," we generally require that a party's objection "put[] the district court on notice of the error."  United States v. Perez-Delgado, 99 F.4th 13, 20 (1st Cir. 2024) (citation modified).  Ross's objection to the government showing the exhibits, as he stated it, was arguably not "sufficiently specific to call the district court's attention to the asserted error" he argues here.  Id. (quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017)); see United States v. Perez-Cubertier, 958 F.3d 81, 86 (1st Cir. 2020) (applying the plain error standard to a defendant's evidentiary challenge where he failed to "object[] to the admission of the . . . evidence"); see, e.g., United States v. Ewing, 140 F.4th 1339, 1350-51 (11th Cir. 2025) (finding that a defendant's "general objection" to the government's ability to display images didn't amount to a "specific objection" to any of the images).  Nevertheless, as note above, we will proceed with abuse of discretion review.

him.  To bolster his position, Ross points to the court's jury instruction regarding the stipulation, which stated:

> A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact.  Since there is no disagreement, there is no need for evidence apart from the stipulation. You must accept the stipulation as fact to be given whatever weight you choose.

Therefore, looking at both the stipulation itself and the court's instruction on how the jury should consider it, Ross contends the government had no need to display the graphic imagery because doing so did not aid the government in meeting its burden to prove that Ross "knowingly possess[ed] th[e] material."  As such, Ross insists the evidence had no probative evidentiary value and that the district court, in reaching the opposite conclusion, erred in its Rule 403 application.

Not so, says the government.  The stipulation didn't diminish the probative value of the files to the extent that would render displaying them unfairly prejudicial under Rule 403.  It offers a few reasons for its contention.  The government asserts that the exhibits demonstrated, as alleged in the indictment, all three devices contained images of child pornography, a point that wasn't covered by the stipulation.  And the exhibits provided the jury with a representative sample of the types of child pornography found across all three devices -- specifically, pornographic images of prepubescent girls.  Further, the stipulation didn't

relieve the government of its duty to prove the mens rea element of the offense, that is Ross's knowledge that the devices contained child pornography. And, contrary to Ross's assertions, the exhibits were probative of his knowledge. Explicating on this point, the government explains that Ross's theory of innocence was that his brother (Scott) framed him and he never touched the devices. Because of Ross's denial, as the government puts it, the exhibits demonstrated that anyone possessing and using the three devices -- as it alleged Ross did -- would had to have known that they contained child pornography, and the stipulation was an inadequate substitute for actual evidence demonstrating Ross's knowledge. The government also emphasizes, as it did at trial, that it had moved to display only a small representative sample of the files from each device -- six photos and three video clips that cumulatively were less than fifteen seconds -- in comparison to the total amount of CSAM retrieved from the three devices. And while displaying and describing the images, admittedly, may have been prejudicial to Ross, it was not unfair prejudice, which is what the district court is called upon to police. Before tackling the parties' contentions, we provide some ground rules.

Under Rule 403, "court[s] may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice

- 14 -

'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" United States v. DiRosa, 761 F.3d 144, 153 (1st Cir. 2014) (quoting Old Chief, 519 U.S. at 180). "In balancing the scales of Rule 403, it is important to note that only unfair prejudice is to be avoided, as, by design, all evidence is meant to be prejudicial." United States v. Morales-Aldahondo, 524 F.3d 115, 119-20 (1st Cir. 2008) (citation modified). We allot district judges with broad discretion in balancing probative value against unfair prejudice, see United States v. Varoudakis, 233 F.3d 113, 121-22 (1st Cir. 2000), and we will only alter their decisions in rare and "extraordinarily compelling circumstances," United States v. Carbone, 110 F.4th 361, 390 (1st Cir. 2024) (citing United States v. Doe, 741 F.3d 217, 229 (1st Cir. 2013)). "Such deference acknowledges that the trial judge is better positioned to assess the admissibility of the evidence in the context of the particular case before it." United States v. Rathbun, 98 F.4th 40, 51 (1st Cir. 2024) (citation modified).

An evidentiary stipulation concerning a disputed fact conclusively proves that fact. See Old Chief, 519 U.S. at 186-87. But generally, the government is "entitled to prove its case by evidence of its own choice," and we do not allow "a criminal defendant [to] stipulate or admit [their] way out of the full

- 15 -

evidentiary force of the case as the [g]overnment chooses to present it." Id. The government reserves autonomy to decide whether to accept a proposed stipulation. If it does so, however, such acceptance does not mean it automatically forfeits the right to offer additional evidence concerning a stipulated fact. See id. at 189 ("A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it."). Indeed, "the prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." Id. at 192. That said, any evidence offered in addition to a stipulated fact, "while still relevant, could potentially violate Rule 403" if it does not withstand the rule's requisite balancing test. United States v. Caldwell, 586 F.3d 338, 342 (5th Cir. 2009) (citing Old Chief, 519 U.S. at 186-87).

In reviewing the parties' contentions, we believe the government has the better argument. Keep in mind Ross's theory of innocence (at trial) -- he professed to have no knowledge of the CSAM-laden cell phone found in his bedroom or of the similarly infused laptop and hard drive found in the car he sported (remember during the search of his home and premises, he provided officers with the key to the vehicle). Ross's counsel presented that

- 16 -

know-nothing defense to the jury during closing argument like this: "The first reasonable doubt that the prosecutor and I agree you must rule out as a possibility during this trial is, one, that maybe [Ross] was set up." "The second reasonable doubt that the prosecutor and I agree you must rule out during the course of this trial is that maybe [Ross] never used the devices." Therefore, confronted with this defense, even with a stipulation in the backdrop that the three devices actually contained child pornography, the prosecution was not relieved of its burden to prove Ross "knowingly possesse[d] . . . [this] child pornography." 18 U.S.C. § 2252A(a)(5)(B). And given that burden, we think the government is correct that the stipulation didn't strip the contested exhibits of their probative value in proving the scienter element: Ross was the devices' owner and aware of the CSAM stored within them. As the government put it, "the child pornography exhibits in this case demonstrated that anyone who possessed the cell phone, laptop, and external hard drive for any length of time would immediately recognize that these devices were full of readily accessible child pornography, making it more probable that Ross knowingly possessed child pornography if he possessed and used these devices for years." The government need not accept a defendant's attempt to use a stipulation to overcome the right of the government "to make a full presentation of the crime currently charged." United States v. Tavares, 21 F.3d 1, 3 (1st Cir. 1994);

- 17 -

see United States v. Long, 92 F.4th 481, 486 (3rd Cir. 2024) (finding written descriptions of evidence inadequate substitutes "because photos and videos convey a pictorial accuracy and detail that words cannot duplicate and that advocates cannot spin" (citation modified)).

Let's break this down further.

On the "possession" requirement, the government's display of the files posited to the jury that the same "category" or "type" of CSAM was found across all three devices which, at times, had shared connectivity, and thereby came "together with the remaining evidence . . . to support [the] jurors' inference[]" that one person was in sole possession of all three devices.[9] Caldwell, 586 F.3d at 343; see Old Chief, 519 U.S. at 187 ("Evidence thus has force beyond any linear scheme of reasoning,

_____

[9] To rebut Ross's finger-pointing at his brother Scott, the government called Scott to the stand who denied any knowledge of the two devices found in Ross's car: "Q. Have you ever -- did you ever see those before at your home? A. No, I don't even know what that Toshiba thing is[.]  Q. They're not your devices; is that correct?  A. Yes, sir, they are not mine."  Additionally, while Scott was aware Ross had multiple cell phones ("Obama phones" as he puts it ["Obama phone" refers to cell phones offered under the Lifeline program, a federal initiative designed to help low-income households afford phone services. See Lifeline Support for Affordable Communications (last visited Mar. 25, 2026), https://www.fcc.gov/lifeline-consumers [https://perma.cc/3DAF-X9DP]]) in excess of the phone he was authorized to have, "nobody knew he had child porn" on those devices.  Scott stated, "I can't even fathom why somebody would do that."  And he denied using, accessing, or downloading anything, illegal or otherwise, onto Ross's devices.

- 18 -

and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict."). In addition to the CSAM files, the devices also contained search data of Ross's more mundane interests, such as gardening and Harley-Davidson motorcycles, inferentially pointing to Ross as the owner of the devices. Thus, viewing the files and search data together portrayed a narrative that a reasonable jury could conclude Ross was in possession of the devices in question. Id.

As for Ross's "knowledge" of the CSAM stored on the devices, we turn to his earlier case where he proffered a stipulation (similar to the one at issue here) regarding the contents found on his computer. Ross I, 837 F.3d at 91. There, because Ross denied knowledge of the CSAM found on the devices, we found that "Ross's proposed stipulation [that the computers contained child pornography] only went so far" and "[t]he [g]overnment's limited use of three videos and six images, among the many thousands of videos and images on Ross's devices, demonstrated that Ross could not have somehow stumbled upon these items without immediately recognizing their graphic content[.]" Id. at 90-91 (citation modified). That situation is nearly identical to the present case. Because Ross maintained that he was unaware of the CSAM found on the three devices, the nine files

the government displayed at trial "served [the] valid, non-cumulative, purpose" of proving his knowledge of the contents on the devices.[10] Id. at 90 (quoting United States v. Eads, 729 F.3d 769, 778 (7th Cir. 2013)). Such conclusion has greater force considering the officer who discovered CSAM on the unauthorized cell phone did so when he was operating the device -- not to search its contents, but merely to toggle on its airplane mode -- and came across the illicit content within a few scrolls. Thus, "showing the [files] . . . had some probative value because they had a tendency to show that [Ross] knew the [devices] contain[ed] [readily accessible] child pornography." United States v. Cunningham, 694 F.3d 372, 389 (3d Cir. 2012). The government's publication of three files from each device aided in its burden to prove, rather than being unaware of the devices' contents, the

---

[10] As Ross tells it, the district court misapplied Ross I in its Rule 403 analysis of the challenged exhibits because that case involved a proposed stipulation rather than as here, an actual one. And because of that error, Ross accuses the court of misanalysing the probative versus prejudicial balancing test. According to the government, though, Ross is misremembering what occurred in Ross I because the parties did, in fact, enter into a joint stipulation like the one here, which states in part, "[t]he images contained in [certain] Government Exhibits . . . contain visual depictions of actual minors under the age of 18." And at the Ross I trial, he "did not dispute that the computers and hard drives contained child pornography." Ross I, 837 F.3d at 88. Regardless, Ross does not explain why an actual versus proposed stipulation is a difference-maker or how the district court botched the Rule 403 analysis. As we've said repeatedly, arguments averted to in a perfunctory manner are waived. See United States v. Brown, 669 F.3d 10, 16 n.5 (1st Cir. 2012).

owner of the devices had knowledge of the CSAM stored within. See Caldwell, 586 F.3d at 343 ("[T]he specific videos published . . . reflected how likely it was that the defendant knew that the video depicted child pornography (which knowledge the stipulation did not mention).").

In a previous child pornography case, we held that the defendant's proposed stipulation didn't reduce the probative value of the actual evidence where he denied having "knowingly possessed" the evidence. See United States v. Dudley, 804 F.3d 506, 517 (1st Cir. 2015) (stating a defendant's "proposed stipulation [that images on a DVD disk constituted child pornography] only went so far" where he denied "knowingly possess[ing]" the illegal DVDs (citing Eads, 729 F.3d at 778)). That rule applies here with equal force because Ross denied both possession of the devices and knowledge of their contents. Cf. Long, 92 F.4th at 487 (noting that the "probative value [of evidence] decreases if [it] is only probative of elements to which the defendant has stipulated"). Accordingly, we see no abuse of discretion in the district court's Rule 403 analysis with respect to the government's publication of the files.

## C. Agent Kelly's Testimony

Ross directs his last evidentiary challenge towards Agent Kelly's testimony. He asserts that because the "graphic images of sexual child abuse did not need any analysis or

explanation to understand," Agent Kelly's description of the files served only to amplify the jury's unfair prejudices against him.[11]

We need not tarry long here. As we indicated, though Ross's argument is likely forfeited because of his failure to adequately raise it below, we nonetheless review for abuse of discretion.

Ross repositions us back to Old Chief and our Ross I decision, neither of which stands for the proposition that evidence loses its probative value -- to the extent that would render it unfairly prejudicial -- when it is presented in addition to a stipulation addressing some of the same facts. Rather, Old Chief explains that, as the prosecution, the government retains authority to accept or decline a defendant's offer to stipulate a fact as a substitution for actual evidence. Old Chief, 519 U.S. at 189 (stating that "the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence"); see also Morales-Aldahondo, 524 F.3d at 120 ("The government need not accept a defendant's attempt to use a stipulation to overcome the right of the government to make a full presentation of the crime currently charged." (citation modified)). And we've just

_____

[11] Here's another snippet of Agent Kelly's testimony describing an image found on the Samsung phone: "It's a small female child, probably under five years of age, lying on her back completely naked with what appears to be ejaculate on her torso. And you can see in the frame an adult's hand and the erect penis of an adult male."

explained that even if the government accepts a proposed stipulation, if that stipulation does not directly speak to an essential element of the crime, the burden still remains on the government to prove that element beyond a reasonable doubt -- here, Ross's knowing possession of the CSAM on the devices he used.  See Ross I, 837 F.3d at 90.

Ross is unsuccessful in presenting us with any authority supporting the idea that the government cannot supplement stipulated facts with relevant, non-cumulative evidence, particularly where a defendant denies having any knowledge of the subject matter of the stipulation.

As for Agent Kelly's testimony, it was particularly valuable in proving Ross "knowingly possessed" the three devices at issue.  As we explained above, similar to the government's publication of the exhibits, Agent Kelly's description of the files contributed to the notion that the same types of images were found across all three devices, making it more likely that whoever was in possession of the devices was also involved with selecting and storing the CSAM found within.  Moreover, Agent Kelly's explanation of the search data that aligned with Ross's other pedestrian interests also "served [the] valid, non-cumulative, purpose" of proving Ross was the person in possession of the devices.  Eads, 729 F.3d at 778.  True, the district court is charged with the responsibility to avoid admitting evidence that is unfairly

prejudicial to a defendant, however, the court is "not required to scrub the trial clean of all evidence that may have an emotional impact, where the evidence is part of the [g]overnment's narrative." Morales-Aldahondo, 524 F.3d at 120 (citation modified) (quoting United States v. Dean, 135 F. Supp. 2d 207, 209-10 (D. Me. 2001)). Thus, despite the stipulation, Agent Kelly's testimony undoubtedly passed the Rule 403 balancing test.

While there may come a time when the government overdoes it by introducing voluminous amounts of CSAM evidence on top of a defendant's stipulation, this is not such a case. As we've explained, the government introduced the images here for probative reasons that extend beyond their capacity to inflate the jury's prejudices. Ross has therefore failed to convince us that the district court abused its discretion by allowing Agent Kelly to describe the files during his testimony.

## Conclusion

Cutting to the chase, Ross cannot triumph here. The district court dutifully allowed both the government to publish the exhibits and Agent Kelly to describe them in his testimony. Ross's conviction stands.

Affirmed.